## William D. Holmes v. Jacob Trumper.

*Note fraudulently altered after delivery, void.* The alteration, by the payee or subsequent holder of a promissory note, which consists of a printed blank, with the time and place of payment and amount filled in with writing, by adding thereto after the printed words "with interest at," at the end of the instrument, the written words and figures "10 per cent," if made without the knowledge or consent of the maker, constitutes a valid defense in favor of the maker, even against a *bona fide* purchaser of the note, and renders the note void.

In an action brought upon such altered note the maker cannot be held liable to pay the amount of the note as originally drawn.

*Maxim not applicable.* The maxim that "when one of two innocent persons must suffer by the fault of a third, he shall sustain the loss who put it in the power of the third to occasion it," does not apply to such a case.

*Submitted on briefs January 11. Decided April 18.*

Error to Washtenaw Circuit.

HOLMES v. TRUMPER.

The facts are sufficiently stated in the opinion.

*E. D. Kinne*, for plaintiff in error, cited *Young v. Grote, 4 Bingham, 253 ; Isnard v. Torres & Marquez, 10 La. An., 103 ; Worrall v. Gheen, 39 Penn. St.; 8 Cal., 109.*

*D. Cramer*, for defendant in error, as to the force of filling blanks left in commercial and other papers, cited : *8 Cal., 109; 3 Barb., 374 ; 19 Johns., 391 ; 6 Mass., 519; 2 N. H., 543.*

If the note as sued was a forgery on the defendant or payor it could not be collected, and that it was so, *vide 2 Wharton Cr. Law, §§ 1426, '33 ; 4 Mass., 53 ; 39 Penn. St., 388.*

The putting in words making a different rate of interest is fatal.—*7 B. & C., 416; 22 Mis., 596; 43 Me., 504.*

An alteration in the sum of the note, not shown to have been made before the execution or with the privity. of the promissor, is material and renders the note void.—*1 N. H., 95 ; 13 N. H., 385 ; 3 Conn., 230 ; 11 Conn., 531 ; 2 Johns. Cases, 198.*

All that is necessary to operate as a material alteration is that it should vary the legal meaning of the paper, and make the new meaning obligatory, and vary the rights and interests, duties or obligations of either of the parties.— *5 Mass., 540; 1 N. H., 45; 1 R. I., 398.*

As to the general effect of alteration in paper.—*15 Johns., 293 ; 3 Met., 103 ; 11 N. H., 365; 22 Missouri, 596.*

An instrument, altered as this was in a material point, without the consent of the maker, is void in the hands of an innocent holder, and cannot be recovered upon.—*25 Eng. L. & E., 123; 3 Barb., 374 ; 24 Wend., 374; Chitty on Bills, 182 and note.*

CHRISTIANCY, J.

This was an action brought by Holmes against Trumper upon a promissory note signed by the latter, which note was partly printed and partly in writing, a printed blank having been used.

The following is a copy of the body of the note as it appeared upon the trial, the portions in italics being printed and the other portions written, viz:

" $400.

" One year *after date* I *promise to pay to Lyman Terry or bearer,* four hundred *dollars, at* the First National Bank of Ann Arbor, *value received, with interest at* 10 per cent. [signed] JACOB TRUMPER."

There was evidence on the part of the defendant tending to show that the note had been altered after it was made and delivered to the payee by adding, after the printed word "at," in the last line, the figures and words "10 per cent," and (as is to be fairly inferred from the whole record and the argument, though not expressly stated), that this alteration was made without the knowledge or consent of the maker.

It was conceded on the trial that the plaintiff was a *bona fide* holder of the note before due, and the only question in the case is whether the wrongful alteration of the note by the payee or any subsequent holder, (for such was the only inference, there being no evidence showing by whom the alteration was made), rendered the note void in the hands of the plaintiff or constituted a defense as against him in favor of the maker:

Without extrinsic evidence of authority to make the alteration, it is too clear to require the citation of authorities, that unless the note, *as signed,* can be treated as a note given in blank, so far as relates to the rate of interest,

giving the payee or holder the right to fill the blank by inserting the rate, the alteration must be treated as a forgery, since it is one which, if valid, would enlarge the liability of the maker.

We are entirely satisfied that this note when signed without the addition of the words "10 per cent" was, notwithstanding the word "at," in legal effect, a complete and valid note, drawing the legal rate of interest at seven per cent; and that the word "at," at the end of the printed form, might readily be overlooked by the signer or disregarded as of no consequence if noticed at all; and that there was, therefore, no such blank left in it as would warrant the payee or holder, without further evidence of assent, to insert a different rate of interest. See *Warrington v. Early,* *2 Ellis & Blackb.,* *763;* *Waterman v. Vose,* *43 Maine,* *504.*

The case, which may be regarded as coming nearest to supporting the implied authority to insert the special rate in this case, is that of *Visher v. Webster,* *8 Cal., 109.* But whatever may be the authority of that case and that of *Fisher v. Dennis,* *6 Cal., 577,* upon which it is based, we do not think it would authorize the alteration in the present case.

The note in that case, as signed, was in the following form:

"One day after date, we jointly and severally promise to pay Messrs. A. N. Fisher & Co., or order, the sum of seven hundred and eight 71-100 dollars for value received, with interest, monthly, at the rate of ——— per cent per annum, per month, until final payment."

The alteration consisted in filling this blank with the word "five." Such a blank in the body of the note would clearly indicate to any one that it was intended to be filled, and the fact that it was payable monthly could not well be

overlooked. But in the case before us the insertion of the words "10 per cent," at the end of the note after the single printed word "at," can hardly be called the filling a blank at all; and though it is urged that leaving the printed word "at" at the close of the note was calculated to facilitate the forgery, by inducing in other parties the belief of the genuineness of the words added, yet it may be said with at least equal force, on the other hand, that to those looking at the note after the alteration critically enough to notice the printed word "at," the printed form of the note itself might well excite suspicion that the form was specially got up by the payee to render the forgery more easy, and that the words "10 per cent," added at the end, were rather calculated to increase than to allay the suspicion of their genuineness; since, if the note was got up and printed only with the intention of leaving a blank for the insertion of the rate, the words, "per cent," might just as well, and much more naturally would have been, printed after a small blank following the word "at." Even the name of the payee was printed in the note. Would the payee, in honestly getting up such a note, have it printed without printing also the words "per cent," which would in all cases be the same, whatever the rate? These considerations are not conclusive, it is true, but they are not without weight.

We think the courts have gone quite far enough in sustaining instruments executed in blank, and the implied authority to fill them up, and we are not disposed to take a step in advance in that direction.

The counsel for the plaintiff in error fully admits the general rule, that an alteration having this effect thus to increase the maker's liability, renders the note void as against the maker, even in the hands of a *bona fide* holder for value. But he insists that, though it may be a forgery, the

peculiar facts of this case bring it within a principle which constitutes an exception to the general rule ; that the maker was guilty of negligence in leaving a blank apparently intended for the insertion of the rate per cent unfilled, and without drawing a line through the blank or erasing the word "at," to indicate that it was not to be filled, and that he thereby invited and facilitated the forgery in a manner calculated to impose upon innocent parties, and that he must therefore, as between him and such innocent parties, be held to pay the note, in its altered form, in the same manner as if it had been originally so drawn, on the principle that, "where one of two innocent parties must suffer by the fault of a third, he shall sustain the loss who put it in the power of the third to occasion it;" or, as expressed by the Louisiana Court, in *Isnard v. Torres, et al., 10 La. Ann., 103,* "Where one of two parties, neither of whom has acted dishonestly, must suffer, he shall suffer who, by his own act, has occasioned the confidence and consequent injury of the other."

This principle is one of quite general application, and where properly understood and limited, it is one of manifest equity; but it has many limitations and qualifications. Whether the present case falls within it or constitutes an exception, is a question of some nicety, requiring considerable accuracy of discrimination for its solution, and upon which unanimity of decision could perhaps hardly be expected; and we accordingly find that able courts have arrived at opposite conclusions upon it. But upon principle and the weight of authority, we think the liability of the maker upon the note, as altered, cannot be maintained. The general principle that, "where one of two innocent parties must suffer," etc., upon which the plaintiff in error relies, as stated by us in *Burson v. Huntington,* decided at the last October term, is one which, in its application, is mainly

confined to cases where the third person, whose act or default has occasioned the loss, has been in some sense or to some extent, the agent of the party who is made to sustain the loss, or when the latter, by his acts or negligence, has authorized the other party to consider him as such; and in all the cases (unless this is an exception) where, upon the general principle relied upon, a party has been held liable upon a written contract on the ground of negligence alone, without reference to such agency, he has only been held liable upon it in the shape in which he allowed it to go from his hands, and not as criminally altered by another. Thus if an acceptor of a bill pay and take it up, and then, without cancelation or any mark to denote its payment, throws it into the street, and it gets into the hands of a *bona-fide* holder before apparently dishonored or overdue, the acceptor will be liable upon it. See *Ingham v. Primrose, 7. C. B. (N. S.,) 82; Foster v. Mackinnon, Law Rep. 4 Com. B., 704.* But even such a case does not wholly, perhaps, exclude the idea of agency; since a party thus throwing his acceptance into the streets, may be said, as between him and the innocent holder, to have authorized any one who might pick it up to negotiate it.

As between the maker of commercial paper, and an innocent party acting upon the faith of the paper, which the maker has voluntarily and intentionally executed and even negligently allowed to go out of his hands and to get into circulation, the general principle we are discussing would preclude such maker from showing that the paper was not intended to have the effect which its appearance indicated, though, as between the original parties, many things might be shown to defeat it. It is substantially a representation upon which he has authorized innocent parties to act; and when they have thus acted he must be

held by the contract indicated by the representation thus made.

But this reasoning extends only to the paper as made and issued by him, or as he has thereby authorized some other person to change its terms; and the note in this case being a complete legal instrument when issued, to hold him bound by the contract, as altered by the forgery, involves the idea that the person committing the forgery was his agent in committing it (a ludicrous absurdity), or at least that he had authorized innocent third parties so to treat him.

Upon the hypothesis of the plaintiff in error which we are now considering, it is not claimed, nor in view of the facts as disclosed by the record can it be claimed, that the person making the alteration had any authority, nor that the maker had done or omitted anything to induce the belief that he had authorized any subsequent holder to make it, nor that it was made by any person standing in any confidential relation to, or held out as such by him. The whole argument goes upon the assumption that the plaintiff took the note in ignorance that any alteration had been made. The argument amounts simply to this: That by the maker's awkwardness or negligence his note was issued by him in a shape which rendered it somewhat easier for another person to commit a crime than if he had taken the precaution to erase the word "at," and to draw a line through the blank which followed it; and that a forgery committed by filling this blank would be less likely to excite suspicion than if committed in some other way.

But how such a crime, whether committed in this or in any other way, could create a contract on the part of the maker, we confess ourselves unable to comprehend; nor are we satisfied that a forgery committed in this way would be any less liable to detection than if committed in many other

ways. The negligence, if such it can be called, is of the same kind as might be claimed if any man, in signing a contract, were to place his name far enough below the instrument to permit another line to be written above his name in apparent harmony with the rest of the instrument; or, as if an instrument were written with ink, the material of which would admit of easy and complete obliteration or fading out by some chemical application which would not affect the face of the paper, or by failing to fill any blank at the end of any line which might happen to end far enough from the side of the page to admit the insertion of a word. The law has no scale by which to measure the various degrees of facility with which different modes of forgery may be committed, or their liability to suspicion or detection; and we see no clear and intelligible distinction by which we could hold the maker in this case bound by this forgery, which would not hold all persons liable for the alteration and forgery of any paper signed by them. Whenever a party in good faith signs a complete promissory note, however awkwardly drawn, he should, we think, be equally protected from its alteration by forgery in whatever mode it may be accomplished; and unless, perhaps, when it has been committed by some one in whom he has authorized others to place confidence as acting for him, he has quite as good a right to rest upon the presumption that it will not be criminally altered, as any person has to take the paper on the presumption that it has not been; and the parties taking such paper must be considered as taking it upon their own risk, so far as the question of forgery is concerned, and as trusting to the character and credit of those from whom they receive it, and of the intermediate holders.

If promissory notes were only given by first-class business men who are skillful in drawing them up in the best possi-

ble manner to prevent forgery, it might be well to adopt the high standard of accuracy and perfection which the argument in behalf of the plaintiff in error would require. But for the great mass of the people who are not thus skillful, nor in the habit of frequently drawing or executing such paper, such a standard would be altogether too high, and would place the great majority of men, of even fair education and competency for business, at the mercy of knaves, and tend to encourage forgery by the protection it would give to forged paper.

We have thus far considered the question involved as one of principle alone; and though the authorities are not uniform, there is, we think, a very decided preponderance in favor of the conclusion at which we have arrived.

Of English authority, there is little if any opposed to the view we have taken. It is sufficient to say of the cases of *Payne v. Wylie* and *Graham v. Gillespie*, cited in Ross on Bills and Notes, p. 194 and 195, that but one of them has any bearing upon the question, as it relates to a promissory note, and that *nisi prius* cases and others which have not been considered of sufficient weight to secure a place in the regular and authorized reports, can be of little value as mere authority.

But the English case upon which the plaintiff in error mainly relies, is that of *Young v. Grote, et al., 4 Bing., 253.* At a hasty glance this case might seem to support the rule for which it is cited; but a careful examination will show that it has very little bearing upon the precise question involved in the present case. That was the case of a check drawn by a customer upon his bankers. The plaintiff, Young, having occasion to be absent, left with his wife certain printed checks upon the bankers, signed by him in blank, to be filled up by her and drawn as his business might require. She delivered one of these checks, so signed, to

the *plaintiff's clerk*, to be filled up by him with the sum of fifty pounds (and some shillings and pence). The clerk filled out the check, beginning the word "fifty" with a small letter, and in the middle of the blank line left for the sum, and showed it to the plaintiff's wife, who directed him to draw the cash. Before presenting it to the bankers this clerk altered the check by inserting before the word "fifty" the words, "three hundred and," thus making it a check of three hundred and fifty, instead of fifty pounds, all in the same handwriting, and then himself presented the check to the bankers, and drew the whole larger sum. The action against the bankers was not, of course, brought by Young upon the check, but for the money which he claimed had been paid out by the bankers without authority. Under the circumstances stated the court held the plaintiff was not entitled to recover.

Now, there are several features or elements in this case which distinguish it from the present, and upon which it is quite possible that case may be supported as law without giving any support to the present action.

It was a check by a customer upon his bankers, who, as depositaries of their customers' money, were *bound*, from time to time, to pay such sums as the latter might order. They were under obligation to pay his checks so long as his money was in their hands to meet them. This circumstance is made prominent in the opinion of Parke J. Now, it is quite clear that no person is under any obligation to purchase a promissory note, nor, consequently, to decide whether the paper is genuine or not.

Another very important circumstance in that case was that the check was filled up by the plaintiff's clerk, the alteration made, and the money drawn by him in person, and the plaintiff, by *employing him* as he did, as his clerk, and (through his wife), as his agent to fill the check, and in

person to draw the money from the bankers, might well be held to have placed a confidence in him for which he should be responsible, or at least to have authorized the bankers to place confidence in him. These circumstances are specially relied upon by Best, C. J., as distinguishing the case from that of *Hall v. Fuller, 5 B. & C., 750*, which was decided directly the other way.

There is, however, one American case (*Isnard v. Torres, 10 La., Am., 103*), which, in its facts, reasoning, and conclusion does, as to a promissory note, fully sustain the doctrine contended for the plaintiff in error.

On the other hand, *Worrall v. Gheen, 39 Penn. St., 388*, is a well-considered case, similar in all its facts to the Louisiana case, and involving the same principles, in which the Supreme Court of Pennsylvania reach the opposite conclusion, the same at which we have arrived. See also, as supporting this view, *Goodman v. Eastman, 4 N. H., 455*, and *Bruce et al., v. Westcott, 3 Barb., 374*.

We see no ground upon which the defendant below could be held to pay the amount of the note, as originally drawn, at least when the action is brought upon the note itself, without departing from the whole theory upon which, at common law, the defense rests, which is that the paper, by the alteration or forgery, is rendered void, and does not constitute a contract in any respect.

There was no error in the ruling of the Circuit Court, and the judgment must be affirmed with costs.

The other Justices concurred.