OPINION.
Richardson, J.,
delivered the opinion of the court:
This suit is brought to recover the amount of a gold certificate issued by the defendants, through the assistant treasurer of the United States at New York, for $5,000, payable to the order of E. H. Birdsall, a subordinate of the assistant treasurer, and by him indorsed, bearing date November 14, 1866.
genuineness of the certificate is not controverted. The defendants refuse and resist payment" to the claimant because the ownership of the certificate having been claimed by another person, one Burr S. Craft, Congress passed an act directing-payment to be made to him, upon his giving a bond of indemnity, and he has been paid the full amount.
The title to the certificate, as between- the claimant -and Burr S. Craft, is therefore the only question in controversy.
facts upon which the respective parties rely in support of their several claims of title, concisely stated, are these:
the certificate for a valuable consideration and in the ordinary course of business, in New York City, when it was indorsed in blank by the payee, E. H. Birdsall. He thereupon caused to be written over the name of Birdsall the words “Pay to the order of Burr S. Craft.”
On the night of the 18th and 19th of December, 1873, this certificate, so indorsed, with others of like kind, was stolen from him in the city of New York, of which fact he immediately gave public notice, and he has never since authorized its sale or transfer. The ownership of the certeficate by Craft up to that time is not controverted.
13th of February, 1879, Congress passed the following- act for his relief (20 Stat. L., 596). He gave the bond of indemnity therein required, and ivas paid from the public Treasury the full amount of the certificate:
Chap. 66. — An(aot for the relief of Burr S. Craft.
Be it enacted, Sre., That the Secretary of the Treasury he, and he is hereby, authorized and’ directed to pay to Burr S. Craft the sum of five thousand *564 dollars in gold coin of the United States, in lieu of certificate of deposit numbered twenty-five thousand three hundred and seventy-eight, issued under act of Congress approved March third, eighteen hundred^and sixty-three, by the assitant treasurer of the United States at New York, on the fourteenth day ofNovineber, eighteen hundred and sixty six, for the sum ot'five thousand dollars, payable in the gold coin of the United States to the order fo E. II. Birdsall, and by the said E. H. Birdsall indorsed, payable to the order of Burr S. Craft, which said certificate, it is claimed, was lost or stolen on or about the eighteenth day of December, eighteen hundred and seventy-three :
Provided, That before the piayment hereinbefore authorized the said Burr S. Craft shall first file in the Treasury a,bond in a penal sum double the amount of the said missing certificate with sufficient sureties, with condition to indemnify and save harmless the United States from any claim because of the said lost or missing certificate; which bond shall be executed in the same manner and form as required under section thirty-seven hundred and five of the Revised Statues for the issue of duplicate registered interest-bearing bonds of the United States.
FEBRUARY 13, 1879.
On the 21st of October, 1879, more than thirteen years after this certificate was first issued, nearly six years after the robbery, and more than eight months after Congress had passed an act which, after describing the certificate by date and number, and as having been indorsed “Payable to Burr S. Craft,” authorized its payment to him, it was purchased by the claimant, a banker and money-changer, at his place of business in London, England, of one Braham, also a citizen of London, well known to the claimant.
At the time of this purchase by the claimant the words “Pay to the order of Burr S. Craft,” which had been written over the indorsement of Birdsall while in possession of Craft, were not to be seen. Between the time of the robbery and of this purchase those words had been fraudulently erased by some person unknown, and so skillfully was the erasure made that no trace of those words could be discovered by the closest examination and scrutiny.
How the claimant’s vendor, Braham, obtained possession of the certificate, or what was its condition when it came into his hands, does not appear. Although the claimant was well acquainted with him and knew his residence in London, he did not take his deposition, while he took the depositions of other persons there.
The only question of law arising upon these facts is whether, *565 under the circumstances, the claimant acquired a good title to the certificate as against Craft, on whose account the defense is made.
It has long been settled as a general rule of law that .a fraudulent change of the face of a promissory note, bill of exchange, or other written commercial instrument, by either adding, altering, or erasing any material words or figures, so as to give a different legal effect or operation to the contract from that agreed upon by the original parties, is not only a forgery, but one which renders the instrument void or voidable as against the promisor, even in the hands of a bona fide holder who purchased it for a full and valuable consideration and without notice of the alteration. (2 Daniel on Negotiable Instruments, §§ 1373-1416; 2 Parsons on Notes and Bills, 2d ed., 571, 584; Story on Promissory Notes, 7th ed., § 371, note; 6 Wait’s Actions and Defences, 469; Fay v. Smith, 1 Allen, 477; Wade v. Withington, 1 Allen, 561; Citizens’ Nat. Bank v. Richmond, 121 Mass., 110; Wood v. Steele, 8 Wall., 80.)
In some States it has been held as an exception to the general rule that when the maker of a note or other commercial paper puts it in circulation so negligently and carelessly drawn as to leave room for easy alteration without defacing it, and without thereby giving cause of suspicion of fraud to the most careful examiner, he is not without fault himself, and having thus contributed means for the commission of the fraud, he has been held to be bound by the alteration so made when the instrument had passed into the hands of a bona fide holder for valuable consideration without notice. (2 Daniel on Negotiable Instruments, §§ 1405, 1406.)
As where a note was written partly in ink and partly in pencil, and the words in pencil were fraudulently erased. (Harvey v. Smith, 55 Ill., 224; Elliot v. Levings, 55 Ill., 214; Seibel v. Vaughan, 69 Ill., 257.) So where the maker left a blank aft ;r the words “one hundred” and before “dollars,” and the word “ fifty ” was fraudulently inserted, he was held liable for the note as altered, on account of his own gross negligence and fault, on the principle that where one of two innocent persons must suffer the loss should fall on the one who has furnished the opportunity. (Garrad v. Haddon, 67 Penn. St., 52; Zimmerman v. Rote, 75 Penn. St., 188; Brown v. Reed, 79 Penn. St., 370; *566 Yocum v. Smith, 63 Ill., 321; Vicher v. Webster, 8 Col., 109; Rainbolt v. Eddy, 35 Iowa, 440.)
But in Massachusetts the general rule is followed' without such exception. It has been held there that the alteration of a promissory note by one of the maters, increasing the amount by the insertion of words and figures in blank spaces left in the printed form, avoid the note as'to such makers as do not assent thereto, even in the hands of a bona fide holder for a vaulable consideration. (Wade v. Withington, 1 Allen, 561; Greenfield Savings Bank v. Stowell et al., 123 Mass., 196, where the leading authorities are reviewed.) There are also other States in which- exceptions to the general rule in similar cases are not recognized. (Wait v. Pomroy, 20 Mich., 425; Holmes v. Trumper, 22 Mich., 427; Washington Savings Bank v. Ecky, 51 Mo., 273.)
These principles and the reasoning upon which they are founded, thus concisely stated, must be our guide in the consideration of the present case.
The findings show that Craft was the owner of the certificate in controversy in 1873; that it was stolen from him; that at the time of the theft it had upon it an indorsement, “pay to the order of Burr S. Craft”; and that before its purchase, six years afterwards, by the claimant those words had been fraudulently erased. This erasure was a forgery of a material part of the instrument, and. according to all authorities, had it been perpetrated upon the face of the note would have made it void as against the promisor, even in the hands of an innocent indor-see Who purchased for a valuable consideration without notice. There would seem to be no reason why the same rule should not apply to such a forgery upon the back of the instrument, and render the title thereto void as against the owner, who held title under the indorsement, who had never authorized its erasure, and who had not himself transferred the property. Commercial'paper is sold in the market in many respects like other chattels, and purchasers must take the risk of the title as affected by fraud and forgery, relying, as in other cases, upon the warranty of their vendors, which is always implied in the sale of property. (Benjamin on Sales, § 639.)
In Wait v. Pomroy (20 Mich., 425), Campbell, C. J., having under consideration the question whether or not the maker of a note which had been altered after its issue was responsible *567 by reason of having himself left the contract in a form which could be easily altered, says: ‘‘But it was well suggested oh the argument, no one is bound to guard against every possible felony. And practically, it is a matter of every-day occurrence to feloniously alter negotiable paper as successfully by changes on the face as by any other way. The public are not very much more likely to be defrauded in one way than in another. There can never he absolute safety except in loolcmg to t hecharac-ter and responsibility of the persons from whom such paper is received, and who are always hound for the consideration, if it is forged. ”
The circumstances-of this case are pot such as to entitle the claimant to any exception to the general rule that forgery by material alteration avoids the validity of a note even in the hands of an innocent holder who purchased for valuable consideration without express notice of the. fraud.
As soon as the loss occurred, Craft gave'public notice, and subsequently Congress passed an act for his relief, authorizing payment to him. This act was notice to.the Treasury Department whence the certificate was issued, and to the office of the assistant treasurer at New York, where it was made payable, if, indeed, it were not notice to everybody-dealing in certificates of that kind. Inquiry at either place at the time of the purchase by the claimant, eight, months after the passage of the act, would have revealed the claim of Craft. There was enough suspicion attached to the offer of sale to have induced a prudent man to make such inquiry, which by means of the cable he could have done in a few hours, and with small expense as compared with the discount offerd.
The buying and selling in London of exchange on New York is of such magnitude that bills of exchange, bankers’ certificates of deposit, checks on banks, payable in the latter city, and obligations against the United States Treasury in the form of bonds, coupons, and certificates of deposit are staple articles of trade with all the numerous banking and-exchange houses in that great commercial and financial center, and command ready sale at very nearly uniform and always well known prices.
Although commercial bills vary somewhat in price according to the. credit of the drawers, genuine certificates of deposit and drafts issued by the United-States Treasury, like first-class bankers’bills, are not subject to varation in market value *568 on that account. They command the highest price, according to the rate of exchange, which is published every day in the public journals, and may be known alike to all persons dealing in them, either as buyers or sellers.
A person. having a $5,000 certificate of deposit from the United States Treasury honestly in his possession in London never need to offer it below its market value as shown by the published rate of exchange, and to make such an offer would create suspicion against the validity of the certificate or the holder’s right to it.
The claimant bought this certificate much below the market rate. By Revised Statutes, section 3505, it is enacted that the value of the pound sterling for all payments into the Treasury shall be deemed equal to four dollars eighty-six cents and six and one-half mills, and that is supposed to be the'relative intrinsic value of the pound sterling or sovereign of Great Britain as compared with the gold coins of the United- States, independently of the prevailing rate of exchange betwen the two countries. Upon that basis the coin representative of the certificate was £1,027 8s. 7%d. Exchange rarely or never varies more than 1 per cent, from that value one way or the other, because of coming into competition with the importation or exportation of coin, which always takes place whenever it can be done cheaper than bills of exchange can be purchased. Taking exchange at the point most unfavorable to the seller, and this certificate ought to have commanded £1,017 5s. 10¿d. At that price, in the hands of an honest holder without suspicion, it would have found a purchaser at any first-class banking house in London. But the claimant bought it for £990, or a discount of about $150 below -its market value.
That the claimant did not take the testimony of his vendor, whom and whose residence he well knew, leaves the suspicious circumstances, which are proved, unexplained.
On the' whole facts, we are of the opinion that the claimant is not entitled to recover, and that his petition must be' dismissed.