## FORDYCE v. KOSMINSKI.

ALTERATION OF NEGOTIABLE PAPER: *Liability of drawer to holder without notice.*

The alteration of a check which was signed and delivered in a complete form for $8.40, by inserting without the consent, authority or knowledge, of the drawer, in blank spaces left in the instrument, a cipher before the figure "4" in the figures " $8.40," on the corner, and by inserting the letter "y" after the word "eight" in the words "eight dollars" in the body of the paper, and thereby increasing the amount to $80.40, although done in such manner as to leave no mark or indication of the alteration observable by a man of ordinary prudence, avoids the check as to the drawer, even in the hands of one to whom it is negotiated, before maturity, for a valuable consideration, and without notice of the forgery.

APPEAL from *Miller* Circuit Court.

L. A. BYRNE, Judge.

*B. W. Johnson* for appellant.

The raising of a negotiable instrument, without the consent of the maker, avoids it even in the hands of an innocent holder for value. *2 Daniel Neg. Instr. (3 ed.), secs. 1347, 1373; 13 Pick., 165; 100 Mass., 379; 2 Taunt., 328; 38 Ark., 127; 30 id., 590; 8 Ark., 378; 9 id., 122.*

Fordyce v. Kosminski.

*Scott & Jones* for appellees.

When a check is raised by the insertion of words and figures in a blank left in the original by the carelessness or negligence of the maker, and passes for value to an innocent purchaser, there being nothing on the face of the check to excite suspicion of an ordinarily prudent man, the maker is liable for the amount as altered. *Young v. Grote, 4 Bingham, 253; 63 Ill., 321; 2 Dan. Neg. Instr., secs. 1405, 1659; 101 Pa. St., 57; 13 Bush., 197; 34 Iowa, 440; 8 Cal., 109; 67 Penn. St., 82.*

BATTLE, J.   This action is founded on a check drawn by the officers of the Texas and St. Louis Railway Company on the Commercial bank of St. Louis, payable to Peter Vaught or bearer.   As originally signed and prepared it was a check for $8.40, and was so drawn as to leave space between the figures "8" and "40" in one corner thereof sufficient for the insertion of a cipher, without crowding, and in the body of the check where the amount was written, sufficient space was left after the word "eight" and the word following, for adding to the word "eight" the letter "y" without giving it the appearance of being added after the check was written.   After the execution and delivery of the check without the authority, consent or knowledge of the drawer, a cipher was inserted between the figures "8" and "40," and the letter "y" was added to the word "eight," and the amount of the check was thereby fraudulently changed from $8.40 to $80.40, and in that form and with no mark or indication of alteration observable by a man of ordinary prudence, was negotiated to appellees, before maturity, for a valuable consideration, in due course of trade, and without notice of the forgery,

It is contended by appellees that appellant is liable to them upon the check for the full amount of the same as altered. This contention is sustained by many authorities, which lay it

down as a general principle of the law merchant, " that when the drawer of a bill or the maker of a note has himself, by careless execution of the instrument, left room for any alteration to be made, either by insertion or erasure, without defacing it or exciting the suspicion of a careful man, and the opportunity which he has afforded has been embraced, and the instrument filled up with a larger amount or different terms than those which it bore at the time he signed it, he will be liable upon it as altered to *any bona fide* holder without notice." But upon this proposition there is an irreconcilable conflict of authority ; and the authorities which sustain the doctrine are not agreed as to its basis. In casting about for some principle on which it could be based, several have been suggested which we will notice.

1. It is said by some that the true principle upon which this doctrine rests is, "that the party who puts his paper in circulation invites the public to receive it of any one having it in possession with apparent title, and he is estopped to urge an actual defect in that which, through his act, ostensibly has none." It is true, as between the maker of negotiable paper, which he has voluntarily and intentionally executed and placed in circulation, and an innocent party acting upon the faith of the paper, the maker, as a general rule, would be precluded from showing that the paper was not intended to have the effect its face indicated, for it is upon the representation he has made by his paper he has authorized and induced the innocent party to act. But this reason only applies to paper as made and issued by him, or as authorized by him to be made or issued. When the paper is a complete legal instrument as issued he does not thereby make any representations that he will be bound by any alteration made without his authority. "To hold him bound by the contract, as altered by such forgery, involves the idea that the person committing the forgery was

Fordyce v. Kosminski.

his agent in committing it (a ludicrous absurdity), or at least he had authorized innocent third parties so to treat him."

2. Some authorities sustaining the doctrine contended for by appellees say it is based on the ground that the maker is estopped to allege that the paper has been altered. This idea originated in a misconception of *Young v. Grote, 4 Bingham, 253.* "That was the case of a check drawn by a customer upon his bankers. The plaintiff, Young, having occasion to be absent, left with his wife certain printed checks upon the bankers, signed by him in blank, to be filled up by her and drawn as his business might require. She delivered one of these checks, so signed, to the plaintiff's clerk, to be filled up by him with the sum of fifty pounds (and some shillings and pence). The clerk filled out the check, beginning the words 'fifty' with a small letter, and in the middle of the blank line left for the same, and showed it to the plaintiff's wife, who directed him to draw the cash. Before presenting it to the bankers this clerk altered the check by inserting before the word 'fifty' the words 'three hundred and,' thus making it a check of three hundred and fifty, instead of fifty pounds, all in the same handwriting, and then himself presented the check to the bankers, and drew the whole larger sum. The action against the bankers was not, of course, brought by Young upon the check, but for the money which he claimed had been paid out by the bankers without authority. Under the circumstances stated, the court held the plaintiff was not entitled to recover."

In commenting upon that case in *Swan v. North British Australasian Co., 2 H. & C., Exch., 175,* Chief Justice COCKBURN said: "The case of *Young v. Grote,* on which so much reliance has been placed, and which is supposed to have established this doctrine of estoppel by reason of negligence, when it comes to be more closely examined, turns out to have been decided without reference to estoppel at all. Neither the

counsel in arguing that case, nor the judge in deciding it, refer once to the doctrine of estoppel. The question arose on a disputed item in an account between a banker and his customer, which had been referred to arbitration, and the question raised by the arbitrator was on whom the loss which had arisen from payment of a check, in which, by the carelessness of the customer, an opportunity had been afforded for increasing the amount, should fall. It was held, not that the customer was estopped from denying that the check was a forgery, but that as the loss, which would otherwise fall on the banker, who had paid on a bad check, had been brought about by the negligence of the customer, the latter must sustain the loss. As the question arose on an account submitted to arbitration, the matter was decided without reference to any technicality; but I am disposed to think that, technically looked at, the matter would stand thus: The customer would be entitled to recover from the banker the amount paid on such a check, the banker having no voucher to justify the payment; the banker, on the other hand, would be entitled to recover against the customer for the loss sustained through the negligence of the latter. Possibly, to prevent circuity of action, the right of the banker to indemnity in respect of the loss so brought about would afford him a defense in an action by the customer to recover the amount." "And in *Halifax Union v. Wheelwright*, L. R., *10 Exch.*, *183*, *192*, which was very similar in its facts to *Young v. Grote*, and in which the alteration of certain drafts was made by a clerk entrusted with the duty of filling them up, the Court of Exchequer, after advisement, expressed the opinion that the ground assigned by Chief Justice COCKBURN, of avoiding circuity of action, was certainly the most exact ground."

3. The doctrine contended for is sometimes based on the principle that "where one of two innocent parties must suffer by the fault of a third, he shall sustain the loss who put it in the power of the third to occasion it;" or, as expressed in *Is-*

*nard v. Torres, 10 La. An., 103,* "where one of two parties, neither of whom has acted dishonestly, must suffer, he shall suffer who, by his own act, has occasioned the confidence and consequent injury of the other." In investigating the nature and extent of this principle, by tracing it through many cases in which it has been applied, Chief Justice RICHARDSON, speaking for the court, in *Goodman v. Eastman, 4 N. H., 457*—a case like this, the question involved and decided being the same — said: "We are inclined to think that the true rule to be extracted from all the cases is, that where one man reposes in another a special confidence, and a loss arises from an abuse of that confidence, if the question, who shall bear the loss, arises between an innocent third person and him who reposed the confidence, the law will throw the loss upon the latter." The same conclusion was reached in *Wade v. Withington, 1 Allen, 562.* It being correct, it will necessarily follow that the principle, that where one of two innocent parties is to bear a loss it must fall on him who put it in the power of the third to occasion it, can have no application to negotiable paper which has been fraudulently altered in material particulars by third persons, as in this case, holding no relation of agency to the maker, and after it has been executed and delivered as a binding contract.

4. Another reason assigned is: "It is the duty of the maker of commercial paper to guard not only himself, but the public, against frauds and alterations, by refusing to sign negotiable paper made in such form as to admit of fraudulent practices upon them with ease, and without ready detection." The idea is, the failure to discharge this duty is negligence on the part of the maker, and that he should be held liable for losses suffered by innocent holders on account thereof. The effect of such a doctrine, if carried into practice, would be to require the maker to anticipate and provide against the many ways through or by which forgery is committed, and to compel him

to perform a contract he never made, because some one has committed a forgery by altering a contract he did make. If this be a correct principle, then the owner of goods stolen through his negligence should not have the right to recover them after they have passed into the hands of a *bona fide* purchaser.

In reply to an argument like this in *Holmes v. Trumper, 22 Mich., 427,* which was an action on a promissory note which consisted of a printed blank, with the amount and the time and place of payment filled in with writing, and was altered without the knowledge or consent of the maker by adding after the printed words " with interest at," at the end of the note, the words " ten per cent," Mr. Justice CHRISTIANCY, speaking for the court, said : " The argument amounts simply to this : that by the maker's awkwardness or negligence his note was issued by him in a shape which rendered it somewhat easier for another person to commit a crime than if he had taken the precaution to erase the word ' at ' and to draw a line through the blank which followed it ; and that a forgery committed by filling this blank would be less likely to excite suspicion than if committed in some other way.

" But how such a crime, whether committed in this or some other way, could create a contract on the part of the maker, we confess ourselves unable to comprehend ; nor are we satisfied that a forgery committed in this way would be any less liable to detection than if committed in many other ways. The negligence, if such it can be called, is of the same kind as might be claimed if any man, in signing a contract, were to place his name far enough below the instrument to permit another line to be written above his name in apparent harmony with the rest of the instrument; or, as if an instrument were written with ink, the material of which would admit of easy and complete obliteration or fading out by some chemical application which would not affect the face of the paper ; or, by

Fordyce v. Kosminski.

failing to fill any blank at the end of any line which might happen to end far enough from the side of the page to admit the insertion of a word. * * * Whenever a party in good faith signs a complete promissory note, however awkwardly drawn, he should, we think, be equally protected from its alteration by forgery, in whatever mode it may be accomplished; and, unless perhaps when it has been committed by some one in whom he has authorized others to place confidence as acting for him, he has quite as good a right to rest upon the presumption that it will not be criminally altered, as any person has to take the paper on the presumption that it has not been; and the parties taking such paper must be considered as taking it upon their own risk, so far as the question of forgery is concerned, and as trusting to the character and credit of those from whom they receive it, and of the intermediate holders.

" If promissory notes were only given by first-class business men, who are skilled in drawing them up in the best possible manner to prevent forgery, it might be well to adopt the high standard of accuracy and perfection which the argument in behalf of the plaintiff in error would require. But for the great mass of people, who are not thus skilful, nor in the habit of frequently drawing or executing such paper, such a standard would be altogether too high, and would place the great majority of men, of even fair education and competency for business, at the mercy of knaves, and tend to encourage forgery by the protection it would give to forged paper."

5. It has been said the free interchange of negotiable paper requires the establishment of the rule insisted on by appellees. But we do not understand the law, in giving peculiar sanction to negotiable paper in order to secure its free circulation and to protect *bona fide* holders for value before maturity, to go to the extent of holding the maker liable on a contract into which he never entered, or gave his assent. On the contrary, the well-settled doctrine is, that a material alteration in

a negotiable instrument, after its execution and delivery to the payee as a complete contract, avoids it except as against parties consenting to the alteration. This doctrine rests on the principle that parties are only liable on their contracts as made and entered into by them, If the contract has been changed by a material alteration without the privity of the party liable upon it, it ceases to be his contract, and he can no longer be held by it. *Overton v. Matthews, 35 Ark., 154; Wade v. Withington, 1 Allen, 562; Greenfield Savings Bank v. Stowell, 123 Mass., 198.*

NEGOTIABLE PAPER:
When alteration avoids.

The authorities upon the question involved in this case are reviewed at length by Chief Justice GRAY in *Greenfield Savings Bank v. Stowell, 123 Mass., 198*, in a very able and elaborate opinion, and after deliberate advisement and careful examination he concluded that the preponderance of authority was to the effect that the alteration in negotiable paper, after it has been signed and delivered as a complete legal instrument, by increasing the amount for which it was made by the insertion of words and figures in blank places left in the instrument, in such a manner as to leave no mark or indication of alteration, avoids the paper as to the makers not consenting thereto, even in the hands of a *bona fide* holder for a valuable consideration. Mr. Justice CHRISTIANCY, in *Holmes v. Trumper, 22 Mich., 427*, and Mr. Justice SEEVERS, in *The Knoxville National Bank v. Clark, 51 Iowa, 264*, likewise reviewed the authorities, and reached the same conclusion. See, also, *Goodman v. Eastman, 4 N. H., 455; Wade v. Withington, 1 Allen, 561; Washington Savings Bank v. Ecky, 51 Mo., 272; Gerrish v. Glines, 56 N. H., 9; Bruce v. Westcott, 3 Barb., 374; Bigelow's Bills and Notes (2d ed.), 573,* and authorities cited; *1 Randolph on Commercial Paper, sec. 187.*

The maker of the check sued on did not authorize the alteration made in it, nor did or omitted anything to induce the belief that it had authorized any one to make it. It was not

made by its consent, or by any person standing in a confidential relation to it, or held out as such by it. According to the evidence introduced in the trial and the findings of the trial court, the check is void in the hands of appellees.

The judgment of the court below must be reversed, and a new trial granted.