## JONES *v.* BANK OF HORATIO.

### Opinion delivered February 12, 1912.

1. BILLS AND NOTES—EFFECT OF ALTERATION.—The alteration of a check, without the drawer's knowledge or consent, although done in such manner as to leave no mark or indication of an alteration observable by a man of ordinary prudence, avoids the check as to the drawer, even in the hands of one to whom it is negotiated before maturity for valuable consideration and without notice of such alteration. (Page 304.)

2. APPEAL AND EROR—ERRONEOUS CHARGE—HARMLESS ERROR.—An erroneous charge as to the burden of proof was harmless where it was favorable to appellants. (Page 305.)

3. TRIAL—REMARK OF COURT.—A remark by the court, in the jury's presence, to plaintiff's counsel that the introduction of the notes alleged to have been forged, together with proof of genuineness of plaintiff''

signature, made out a *prima facie* case in favor of defendant, was not prejudicial where the jury were instructed that the burden was on the defendant to show that no alterations had been made in the checks, especially where no request was made that the jury be instructed to disregard the court's remark. (Page 305.)

Appeal from Sevier Circuit Court; *Jeff T. Cowling,* Judge; affirmed.

*Otis T. Wingo,* for appellant.

Alteration of a check avoids it even in the hands of innocent holders. 49 Ark. 40; 1 Cent. Rep. 253; 100 N. Y. 50.

*B. E. Isbell,* for appellee.

FRAUENTHAL, J. The plaintiffs, Jones & Company, were customers of the defendant, which is an incorporated bank. They deposited with it $2,302.05, and from time to time drew checks on it which were promptly paid, except the last, which was protested, the defendant claiming that plaintiffs had overdrawn their account before its presentation. The plaintiffs claimed that they had drawn checks on defendant to the amount of $2,230.37, thus leaving a balance of $71.68 undrawn and due to them. They instituted this suit for the recovery of that sum, and also $3.15 the protest fees paid by them on the check which they claimed was wrongfully dishonored. On the other hand, the defendant claimed that the plaintiffs had drawn on it checks amounting to $2,354.37, which it had paid, thus making plaintiffs indebted to them in the sum of $52.32, the amount which they had overdrawn. By way of counterclaim, defendant asked for judgment for that sum.

The controversy grows out of the alleged invalidity of two checks presented to and paid by defendant. The two checks were signed by plaintiffs and made payable to one James Hale. The plaintiffs claimed that the two checks were altered after their issuance, and without their knowledge or consent, by being changed in date and raised in amounts. One of the plaintiffs, W. A. Flannigan, testified that he had signed both checks and delivered them to the payee; that one was dated January 28, 1911, and was for two dollars, and the other was dated February 9, 1911, and was for three dollars. When these two checks were presented to and paid by defendant, they appeared as dated February 11, 1911; and the first was

for $29 and the last for $100, both of which latter amounts the defendant paid thereon.    The jury returned a verdict in favor of defendant for the amount of the counterclaim, and judgment was rendered accordingly.

It is urged by counsel for plaintiffs that the court erred in its refusal to give certain instructions asked by them.    The plaintiffs admitted the genuineness of the signatures to both checks, but denied the genuineness of their dates and amounts. In effect, they requested the court to instruct the jury that, if they found that the checks had been altered as to amounts, then the defendant was not entitled to credit therefor; that it devolved upon defendant to establish by the preponderance of the evidence the genuineness of the checks in every material part, and if it failed to make such proof it was not entitled to credit for the checks, even though they found that the alleged alterations were so made as to leave no trace or appearance thereof upon their face.    The court, however, instructed the jury in effect that if from the evidence they found that the two checks in controversy were drawn by the plaintiffs for the amounts as shown by the checks, which were presented at the trial, and that these checks were paid by defendant, then it was entitled to credit therefor.    It further instructed the jury as follows:    "But, on the contrary, if you find that the checks have been raised in amount and are not as they were when issued and put in circulation by Jones & Co., and the bank paid these checks after they had been altered, then the bank would be liable; in other words, it resolves itself down to whether or not they have been altered since they left Jones & Co., and in that the burden of proof is upon the defendant bank to prove that the checks have not been altered."

The original checks have not been brought up with the record.    From the testimony, it appears that there is a conflict as to whether or not the alleged alterations were apparent on the face of the checks.    It has been settled by this court that the alteration of a check duly signed and delivered, without the knowledge or consent of the drawer, "although done in such manner as to leave no mark or indication of an alteration observable by a man of ordinary prudence, avoids the check as to the drawer, even in the hands of one to whom it is negotiated before maturity for a valuable consideration and without notice

of the forgery." *Fordyce* v. *Kosminski,* 49 Ark. 40. But whether or not a check has been altered is a question of fact to be determined by a jury from the evidence adduced upon the trial of the case. There is a distinction made as to where the burden of proof rests relative to proving or disproving the genuineness of the check, bill or note, in cases where the alteration is apparent on the paper, and in cases where the paper appears fair upon its face. *Inglish* v. *Breneman,* 5 Ark. 378; *Chism* v. *Toomer,* 27 Ark. 108; *Gist* v. *Gans,* 30 Ark. 285; *LeMay* v. *Williams,* 32 Ark. 166; *Klein* v. *German National Bank,* 69 Ark. 140.

In the case at bar, however, it is not necessary to note or pass upon this question upon whom the burden of proof rests, because the court instructed the jury that the burden rested with the defendant to prove that the checks had not been altered. In no event, therefore, have the plaintiffs any ground for complaint relative to the instructions given on this question, for it was favorable to them.

It is also urged in this connection that the court erred in stating in the presence of the jury that the defendant had made out a *prima facie* case by proof of the genuineness of the signatures of the plaintiffs to the checks and the introduction thereof. It appears that during the progress of the trial defendant offered in evidence the two checks, after it had been admitted that both had been signed by plaintiffs. In the argument made before the court relative to the admissibility of the checks, the court remarked to the attorney that the introduction of the checks made out a *prima facie* case for defendant, to which remark counsel for plaintiff excepted. This remark was, however, not directed to the jury, but to the attorney, and it can not be said that the jury considered it as an instruction influencing them. On the contrary, the court in the instructions given by it specifically told them that the burden of proof devolved upon defendant to show that no alterations had been made in the checks. It appears that the counsel for plaintiffs simply excepted to the remark thus made by the court to the attorneys, but it does not appear that he requested the court to state to the jury that they should not regard it; and we do not think that the remark thus made can

be considered such an abuse of discretion as to constitute error so prejudicial as to call for a reversal of the judgment.

It is earnestly insisted that the verdict is not supported by sufficient evidence. It appears from the testimony that plaintiffs were engaged in railroad construction work, and that James Hale was employed by them as a laborer. The testimony on the part of plaintiffs tended to prove that he worked for them a few days in January and February, and that the entire amount of his labor was less than $25; that part of this was paid by check, which he transferred to another person whom he owed, and which is not involved in this case. Mr. Flannigan, the person who signed the checks in controversy, testified that he wrote the entire written portions of both checks, and that the amounts as written by him had been raised in both checks. Defendant, however, introduced testimony of expert witnesses which tended to prove that neither of the checks presented in evidence had been raised or altered in the amount thereof. The written checks were exhibited to the jury; and these, taken in connection with this testimony of these witnesses expert in handwriting, were sufficient to sustain the verdict. The question as to whether the amounts in the checks had been raised was one peculiarly for the jury to decide under this testimony; and, they having determined the question under instructions of which plaintiffs can not complain, their verdict is final. The judgment is accordingly affirmed.