## COMMONWEALTH BANK v. DUNN.

1. BILLS AND NOTES—MATERIAL ALTERATION.

Any alteration of a negotiable instrument which changes the sum payable, either for principal or interest, is a material alteration (CL 1948, § 439.127).

2. SAME—RAISED CHECK—BANKS AND BANKING.

Bank in which a raised check was deposited by party who raised it and which was not a party to the alteration may enforce payment according to the original tenor of the check (CL 1948, §§ 439.126, 439.127).

3. SAME—DEPOSITED CHECKS—CERTIFIED CHECKS—ACTION.

Bank in which altered check, drawn by defendant, was deposited by payee who had raised it and which bank certified a check to defendant against payee's account under mistaken belief payee had sufficient to cover amount of certification may not recover amount paid on certified check, where it had relied solely on the altered check.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—UNJUST ENRICHMENT.

The question of unjust enrichment of defendant maker of check is not before Supreme Court on bank's appeal in its

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 6, 7] 2 Am Jur, Alteration of Instruments § 65, 8 Am Jur, Bills and Notes §§ 612, 788.

[1, 6, 7] Alteration of note before delivery to payee as affecting parties who do not personally consent. 44 ALR 1244.

Alteration of commercial paper by reducing the amount. 9 ALR 1087.

[2, 7, 8] 2 Am Jur, Alteration of Instruments §§ 32, 35; 8 Am Jur, Bills and Notes § 445.

[2, 7, 8] Crediting proceeds of negotiable paper to holder's deposit account, as constituting bank a holder in due course. 6 ALR 252; 24 ALR 901; 60 ALR 247; 80 ALR 1064.

[3] 7 Am Jur, Banks §§ 458, 563.

As to right of drawee bank to recover amount paid on altered check, see 7 Am Jur, Banks § 575 et seq.; 8 Am Jur, Bills and Notes §§ 857, 859; Annotation: 12 ALR 1089; 71 ALR 337.

[3] Right of drawee bank to charge back a credit given on a forged check. 5 ALR 1566.

[7] 2 Am Jur, Alteration of Instruments § 40 et seq.

action on check deposited with it by payee who had raised the amount payable thereon.

5. SAME—QUESTIONS REVIEWABLE—NEGLIGENCE—CERTIFICATION OF CHECK—ACTION ON ALTERED CHECK.

Question of negligence of bank in which payee had deposited check drawn by defendant, after raising it, in certifying check drawn by payee against account to which raised check deposit had been credited but upon which payment had been thereafter stopped is not before Supreme Court, where bank had sued defendant on raised check.

6. BILLS AND NOTES—STRICT CONSTRUCTION OF STATUTES—ALTERATION OF INSTRUMENTS.

Section of negotiable instruments law relative to alteration of such instruments is strictly applied (CL 1948, § 439.126).

7. SAME—CERTIFIED CHECK—ALTERATION OF CHECK—CONSENT TO ALTERATION—ESTOPPEL—STATUTES.

Use by drawer of check on which bank in which it had been deposited after having been raised by payee sued such drawer for raised amount, of a certified check against payee's account after knowledge of alteration of deposited check did not amount to an assent to the alteration nor estop the drawer thereof from relying upon the statutory protection relieving it from liability for payment of any amount other than according to the original tenor of the check (CL 1948, §§ 439.126, 439.127).

8. SAME—LIABILITY OF DRAWER OF CHECK LATER ALTERED BY PAYEE.

Drawer of check who is sued for amount to which payee had raised it before depositing it to his account with plaintiff bank is liable only to the extent of its original tenor (CL 1948, § 439.126).

9. COSTS—BILLS AND NOTES—ALTERED CHECK.

Costs in both courts are awarded plaintiff bank, where judgment had been rendered for defendant drawers of check, raised before deposit with plaintiff, where plaintiff was entitled to the judgment for original amount of check (CL 1948, § 439.126).

Appeal from Wayne; Brennan (John V.), J. Submitted January 6, 1953. (Docket No. 1, Calendar No. 45,579.) Decided March 10, 1953.

Assumpsit by Commonwealth Bank, a Michigan corporation, against Simon E. Dunn, Sr., and others to recover amount of check for amount of check on which payment was stopped. Judgment for defendant in common pleas court affirmed by circuit court on appeal. Plaintiff appeals. Reversed and remanded for entry of judgment for plaintiff in amount of check before it was raised.

*Robert T. Adams,* for plaintiff.

*Dennis Boyle,* for defendants.

BUSHNELL, J. This is an appeal by plaintiff, Commonwealth Bank, from a circuit court judgment of no cause of action on appeal from a like judgment entered in the common pleas court. The circuit judge, after an examination of the record made in the common pleas court, found that its findings of fact were well within that record, and that the law pertaining thereto had been correctly applied.

The bank brought its action in assumpsit upon the common counts, and especially upon a "promissory note." The "promissory note" was in fact a check dated September 28, 1949, drawn by defendant S. E. Dunn Company on the National Bank of Detroit, and payable to the order of Edward J. Fallon. The check was typewritten and appeared to be in the sum of $504.98. Fallon, who was then an employee of Dunn, deposited this check in his account in the Commonwealth Bank on September 29, 1949. It was indorsed by that bank for collection through the clearing house on September 30th, but was not paid by the drawee bank because Dunn had stopped payment thereon.

S. E. Dunn, Jr., who, with his father, Simon E. Dunn, Sr., was conducting a brewery supply business in Detroit under the name of S. E. Dunn Com-

pany, testified that a few days before the check was issued it was discovered that Fallon had been embezzling money from their company. Dunn assumed, on September 29th, that the check in question, which had been issued to reimburse Fallon for cash which he spent for office supplies, had been raised from its correct amount of $4.98 to $504.98, because on that date Fallon admitted that he had been raising checks. Dunn explained that this check was written on a typewriter after Fallon had told him that the check-writing machine was not working.

On September 30th Dunn went to the Commonwealth Bank and told them that Fallon had been embezzling money and that he was suspicious that he had also been raising checks. He stated that at the time he did not know which specific checks had been raised. Dunn asked one Louis Page, and another person unidentified except by the description of "brother-in-law," how much money Fallon had in his account. When informed that the balance was $544, Dunn obtained a check from Fallon in this amount and had it certified by the Commonwealth Bank that same day. The certified check was held by Dunn until June 21, 1951, when he either cashed or deposited it in the National Bank of Detroit. That bank sent it through the clearing house for payment by the Commonwealth Bank, and it was so paid.

After the bank had rested its case, permission was granted to call Charles F. Mayler, general counsel for the Commonwealth Bank, as a witness. Mayler was not cross-examined by the defendant, nor did Dunn Company offer any rebuttal testimony. Mayler testified that, almost immediately, efforts were made to adjust the matter. Dunn objected to this testimony, but it was admitted by the court, in the light of his testimony, that he did not authorize his then counsel to negotiate with the bank. It appears from this testimony that, when defendant's then attorney,

Edgar Pugh, was asked to return the certified check
because it had been certified against a deposited
check of the Dunn Company, on which payment had
been stopped, Pugh told Mayler that "it would take
a week or something like that to work this out,"
meaning Fallon's defalcation of approximately
$4,000. Pugh said that eventually the Dunn Com-
pany would either return the certified check to the
bank or raise the stop payment on the one in ques-
tion, and that they would not transfer or try to cash
the certified check. This conversation took place on
October 28, 1949.

The Commonwealth Bank began its action in the
common pleas court on June 14, 1951, a few days
prior to its payment of Fallon's certified check.

In the amended answer to plaintiff's declaration,
defendant company denied that exhibit A (the check
for $504.98) was a true copy of the $4.98 check which
it had given to Fallon and on which payment was
stopped before it had cleared. Defendant alleged
that the check given to Fallon had been raised by
him and liability thereon was denied under certain
statutes, which will hereafter be discussed. Defend-
ant further insisted that it was entitled to a dis-
missal of plaintiff's suit because it was prematurely
brought, in that it was instituted before the present-
ment and payment of the certified check and at
a time when the bank had not as yet suffered any
damage or loss.

The bank, in reply, asserted that defendant was
unjustly enriched and was estopped to assert the
statutory defense of alteration; that when the Dunn
Company had the Fallon check certified, it had
knowledge that it was so certified against funds
represented by defendant's uncollected check, and
thereby a fraud was perpetrated upon plaintiff bank.
It denied that its action was prematurely brought,
in that, having certified Fallon's check, it became

liable for its payment. The bank further charged that Dunn did not give notice of the alteration of its check prior to the certification of Fallon's check, and that the first notice the bank had of a claim of alteration was on July 23, 1951, when it received defendant's amended answer. In reply to plaintiff's answer to the amended plea, the Dunn Company asserted that the bank did not become a holder in due course, as defined in CL 1948, § 439.54 (Stat Ann § 19.94), but that the entire matter is governed by the bank collection code, CL 1948, § 487.601 et seq. (Stat Ann 1943 Rev § 23.331 et seq.). The allegations of fraud and estoppel, and the lack of notice of claim of alteration, were denied; the payment of the certified check was admitted.

The bank on its appeal here renews its claim of estoppel and adds an allegation of negligence on the part of defendant company in permitting its employee, Fallon, to use a typewriter to make out checks in such a manner that they could easily be altered. Defendant company urges the application of section 126 of the uniform negotiable instruments law (CL 1948, § 439.126 [Stat Ann § 19.166]) which reads as follows:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent indorsers. But when an instrument has been materially altered and is in the hands of a holder, in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

A material alteration is defined in CL 1948, § 439.-127 (Stat Ann § 19.167), as "any alteration which changes * * * the sum payable, either for principal or interest."

The alteration was material and was made without the assent of Dunn. The bank is a holder in due course and, not being a party to the alteration, it may enforce payment according to the original tenor of the check, *i.e.,* $4.98. When the bank certified the check drawn on it by Fallon in favor of Dunn in the sum of $544, it was mistaken in believing that Fallon had this amount of money on deposit. Although Dunn has not changed its position in reliance upon this certification (see 9 CJS, p 793) the bank cannot in this action recover the money it paid on the certified check, because it has relied solely upon the altered check.

The bank argues that Dunn's negligence in permitting Fallon to write checks on a typewriter creates an estoppel. It cites *Goldsmith* v. *Atlantic National Bank of West Palm Beach* (Fla), 55 So2d 804; and *Weidman* v. *Symes,* 120 Mich 657. See, also, *Holmes* v. *Trumper,* 22 Mich 427.

The *Goldsmith Case* is comparable on the facts. Decision there was planted on the proposition that the trial court's exoneration of the maker did not square with the appellate court's concept of simple justice, and that it was incompatible with common sense and fair dealing to relieve the negligent maker at the expense of the bank. This case, like the *Weidman* and *Holmes Cases,* was, however, decided without reference to the negotiable instruments law. The question of unjust enrichment is not properly before this Court in an appeal from an action based upon the altered check. It would more properly be presented in an action on the certified check.

We also note, but do not discuss, because it is not before us (see *Poelman* v. *Payne,* 332 Mich 597, 605), the suggested negligence of the bank in certifying a check for the item or items entering into the balance in Fallon's account which had been credited but not paid by the drawee bank. It may be

unfortunate that the bank's remedy is limited, but we deem it of vital importance to preserve the integrity of the negotiable instruments law, and for that reason, and that reason alone, we feel the herein quoted alteration section of that law should be strictly applied.

Under the facts as presented, Dunn's use of the certified check, after knowledge of Fallon's alteration of the deposited check, cannot be held to be an assent to the alteration. Nor was Dunn estopped to rely upon the statutory protection of the quoted section of the negotiable instruments law.

An examination of the record does not disclose any proof of fraud or deceit on the part of Dunn. The claim that the action of the bank was prematurely commenced need not be considered in the light of our conclusions.

The judgment of the circuit court is reversed and the cause is remanded for entry of a judgment in the amount of $4.98 in favor of plaintiff. Plaintiff will also recover its costs in both courts.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred.