Richard W. RICKETT JR *v.* Dr. Harry HAYES

73-221                                          511 S.W. 2d 187

Opinion delivered July 8, 1974

*Tom Gentry,* for appellant.

*Smith, Williams, Friday, Eldredge & Clark,* by: *W. A. Eldredge, Jr.* and *J. D. Watson,* for appellee.

JOHN A. FOGLEMAN, Justice. We remanded this medical malpractice case for a new trial. *Rickett* v. *Hayes,* 251 Ark. 395, 473 S.W. 2d 446. On this appeal from a second judgment based upon a jury verdict adverse to the appellant, a former patient of the appellee, appellant asserts the following points for reversal:

I. The trial court committed prejudicial error in failing to disqualify a juror for prejudice and bias.

II. In criticizing the appellant's expert witness, Dr. Walker, the trial court invaded the province of the jury.

III. AMI 1501, as modified and given by the trial court, was prejudicially erroneous.

These points may be treated without elaborate preliminary statements of the factual background. We will take them up in order and, under the heading pertaining to each point, state only the background essential to the treatment of that point, as disclosed by the abstracts in the case. At the outset, we state that we find no reversible error.

I

Twenty-four prospective jurors were chosen by the clerk for the regular jury panel. After preliminary questions by the circuit judge were answered by them, the respective attorneys conducted voir dire examinations. A Mrs. Dickerson disclosed that she was then under the care of a doctor and that she was the sister-in-law of a doctor. There was, to say the least, some ambiguity in her responses to questions pertaining to her attitude about medical malpractice cases, and it would not be unreasonable to say that she equivocated about the matter. She first stated that, if the evidence showed that there had been negligence, she could go along with it. When appellant's attorney asked her if she could be sure, she said that she didn't know. She then gave a positive affirmative answer when the court asked her if she would make a finding that appellee was guilty of negligence if the evidence warranted it under the instructions of the court. When the court inquired as to any reluctance to do so on her part, she stated that she would like to be disqualified, or that she would disqualify herself. She disavowed any preconceived notion about malpractice that would prevent her from giving the parties a fair, impartial determination of the facts. When appellant's attorney again pursued the matter of her desire to disqualify, she said that, maybe there was some doubt in her mind, but she didn't think there would be any doubt in giving "him" a fair trial. When appellant's attorney asked, "Well, you're not quite sure, are you?" she responded, "Well, maybe not." When asked by the judge to explain, Mrs. Dickerson said that she felt one way when questions were put by the attorney, but felt confident when the questions were put in the way they were by the judge. She was emphatic, upon further questioning by the judge in saying that she would be fair and impartial, that she could give "him" a fair judgment and would find for Mr. Rickett just as quickly as

she would for Dr. Hayes should the evidence warrant it. The judge found her qualified over appellant's objection and challenge for cause. Thereafter, appellant's attorney struck Mrs. Dickerson's name in exercising his three peremptory challenges. In arguing appellant's motion for new trial, the attorney stated that she was one of those he was forced to strike because he couldn't let someone sit on the jury who answered as she did.

We need not decide whether the circuit judge abused his discretion in this instance. The questioned juror did not sit on the jury. It has been a long-standing rule in this state that a party is not entitled to claim prejudice in such circumstances, unless it is shown that he was forced to accept some objectionable or disqualified juror without the privilege of exercising a peremptory challenge. *Arkansas State Highway Commission* v. *Dalrymple,* 252 Ark. 771, 480 S.W. 2d 955. No juror who was challenged for cause served on the jury and it is not shown that appellant would have otherwise struck the name of some juror other than the three actually stricken.

## II

Dr. Robert V. Walker, an oral surgeon of Dallas, Texas, who had performed surgery on appellant, after the surgery and treatment by Dr. Hayes, was called as an expert witness by appellant. During cross-examination of this witness, appellant's attorney registered an objection, asserting that the cross-examining attorney was badgering the witness. The trial judge stated that the attorney for appellee was entitled to considerable latitude on cross-examination, expressed his desire to keep the trial on an impartial plane and stated the necessity for cooperation by all attorneys in the case in order that his objective be accomplished. When appellant's attorney continued to object saying that appellee's attorney was badgering the witness by not permitting him to fully answer questions, the judge interrupted, saying:

> The witness is very reluctant or he offers more testimony than is called for, he volunteers information and I've asked the witness to cooperate and I've also asked the attorneys. Now, I'm doing the very best I can to require

both parties to conduct this trial in a professional-like manner. Now, if you want to proceed, we will. If you want to take a recess, we'll take it and come back and try some more.

These are the remarks of which appellant now complains. His attorney did request a recess, during which he stated his objections in camera, directing them toward the characterization of the witness as reluctant and the statement that the witness volunteered more information than he was asked for by the cross-examiner's questions. Without any further ruling having been made, appellant's attorney stated that he couldn't afford to ask for a mistrial. After the judge stated he had on two or three previous occasions asked the witness to answer the questions, had asked the cross-examiner to proceed in an orderly manner, and had intended his remarks to be addressed to both parties equally, the cross-examination was resumed. No admonition was then given the jury and none was requested. The cross-examination proceeded to its conclusion on the same day but before the commencement of redirect examination on the following day the trial judge addressed an admonition to the jury. He said:

So I would ask you to be patient with the attorneys and the Court and if the objections seem to you to be frivolous or unnecessary, please give us the benefit of the doubt and realize that the attorneys are doing their best to do what the law says they should do and the Court is doing its best to follow the law in making the decisions. ...sometimes in the heat of trial, it may appear that we have lost sight of these things and that is not necessarily true. The attorneys, I am confident, have complete respect for the Court and I, likewise, have complete confidence in the attorneys. Do not hold anything against the litigants, one way or the other, if things seem sometimes to get a little uptight. You may proceed.

In instructing the jury, Judge Digby appropriately gave AMI, Civil, 101 (f), which reads:

I have not intended by anything I have said or done, or by any questions that I may have asked, to intimate or

suggest what you should find to be the facts, or that I believe or disbelieve any witness who testified. If anything I have done or said has seemed to so indicate, you will disregard it.

As has often been said, it is simply impossible for an appellate court or its individual members to capture from a cold written record the atmosphere prevailing in the courtroom during a fiercely contested trial, as this obviously was. It is the peculiar role of the trial judge to supervise and expedite the trial of a lawsuit and to avoid having it degenerate into an emotionally charged verbal battle between attorneys or between witnesses on the one hand and attorneys on the other. Of course, in doing so, it is his duty to avoid any expression or intimation of his feelings about the credibility of any witness or his opinion on any question of fact which might influence the jury.

Appellee's counsel have, in their brief, referred us to portions of the record of the cross-examination of Dr. Walker which might well be taken as indicative of a reluctance on the part of the witness to give direct answers and of a desire to volunteer information well beyond the scope of questions directed to him. To say the least, it does appear that the judge had found it necessary to admonish this witness on more than one occasion during his cross-examination to answer questions directly and concisely. Certainly there are occasions when a trial judge may and should rebuke, reprove or admonish a witness about his conduct and manner of answering questions. Appellee's attorneys have also cited cases from other jurisdictions where remarks less moderate than those made by the trial judge here have been held to be not prejudicial or reversible error. See *Kendrick* v. *Healy*, 27 Wyo. 123, 192 P 601 (1920); *Ganz* v. *Metropolitan St. Ry. Co.*, 220 S.W. 490 (Mo. 1920); *Uram* v. *The American Steel & Wire Company of New Jersey*, 379 Pa. 375, 108 A 2d 912 (1954); *Aetna Life Insurance Company* v. *Kramer*, 65 Okla. 165, 165 P 179 (1917); But we need not determine whether the judge's remarks in this instance were necessary to the proper conduct of the trial, or whether they were indicative of the judge's feeling about credibility of the witness. As above pointed out, neither a motion for declaration of a mistrial nor a request for

an admonitory instruction was made, even though appellant now argues that it was the duty of the trial court to instruct the jury that his remarks should not be considered as reflecting upon the credibility of the witness. Appellant seems to feel that his objection was sufficient to require some action that the court did not take and was not asked to take. A mere objection to the comment by the presiding judge is not sufficient basis for reversal, evdn if we took it to be erroneous or prejudicial. *Arkansas Valley Industries* v. *Giles*, 241 Ark. 991, 411 S.W. 2d 288; *Lin Manufacturing Company* v. *Courson*, 246 Ark. 5, 436 S.W. 2d 472; *Jones* v. *Bank of Horatio*, 102 Ark. 302, 143 S.W. 1060. The declaration of a mistrial is a drastic remedy to which resort should not be had unless justice cannot be served by a continuation of the trial or unless prejudice may not be avoided or removed by any other step or means. *Back* v. *Duncan*, 246 Ark. 494, 438 S.W. 2d 690; *First National Bank of Springdale* v. *Hobbs*, 248 Ark. 76, 450 S.W. 2d 298; *Donahue* v. *Cowdrey*, 246 Ark. 1028, 440 S.W. 2d 773; *Johnson* v. *State*, 254 Ark. 293, 493 S.W. 2d 115.

There are many instances where an admonitory instruction will have the desired effect. See, e.g., *First National Bank of Springdale* v. *Hobbs*, supra. If indeed, the trial judge's remarks were erroneous or prejudicial, we have no doubt that he would have instructed the jury to disregard them or not to consider them as indicative of his opinion on any question of fact or to have any bearing on the credibility of the witness. Our view is supported by the fact that the judge did, on his own motion, give the admonitions recited above. This is about all he could have been expected to do without a request for more direct action. It is well known that, for tactical reasons, trial counsel sometimes deliberately avoid requests for such instructions for fear that they will overemphasize the effect of improper remarks and thereby result in prejudice to the client which might not otherwise exist. For this reason, our established rule that more than a mere objection is necessary to our finding reversible error in such a case is a proper one and is applicable here. Were the rule otherwise, one could withhold any request for a mistrial or an admonitory instruction, speculate on the outcome of the trial, and then complain from the perspective of hindsight that the court's failure to take appropriate action on its own motion had deprived him of a fair

trial. This possibility should be eliminated. In viewing this matter, we feel that the failure of appellant to include this ground in the motion for a new trial filed by him, when considered along with the admonitions given by the trial judge and the absence of any request by appellant for any other action during the trial, is not without significance.

## III

Appellant argues here that the circuit judge prejudically modified AMI 1501 by stating the test of skill and learning required to be that ordinarily possessed and used by members of appellee's profession in good standing engaged in the "same type of practice or specialty." He says that the use of the disjunctive terminology was erroneous because appellee was engaged in the practice of plastic surgery as a specialty but that oral surgeons, as well as plastic surgeons, perform the type of operation done on Rickett, even though they practice different specialties. We feel that appellant correctly states that the record indicates that the practice of the two types of surgery overlaps in this instance but that the standards of the two specialties may differ. Appellant says that because of the wording of the instruction, the jury was permitted to use alternative standards in reaching their decision. Even though the instructon, as it appeared in AMI, Civil (1965) was drafted so that either the words "type of . practice" or "specialty" could be used, the use of both in the alternative is not reversible error in the circumstances of this case.

The word specialty as used in the instruction simply means a particular branch or field of the medical profession. In the sense it is used it has been defined as:

> That in which one specializes or has special knowledge; a branch of knowledge, art, science, or business to which one specially devotes himself. Webster's New International Dictionary, 2d Ed.

> A branch of knowledge, science, art, or business to which one devotes oneself whether as an avocation or a profession and usually to the partial or total exclusion of

related matters. Webster's Third International Dictionary, Unabridged.

A special subject to study, line of work, area of interest, or the like. Random House Dictionary of the English Language, The Unabridged Edition (1966).

An aspect of medicine to which physicians confine their practice after certification of special knowledge by examination. The American Heritage Dictionary of the English Language (1969).

The use of both alternatives probably resulted from the desire of appellant to use only "type of practice," while appellee wanted to use the word "specialty" to the exclusion of "type of practice." It does not seem to us the appellant could have been prejudiced by the court's action. It is clearly established that the treatment of the patient is to be tested by the standards of the doctor's own school. See *Bockman* v. *Butler,* 226 Ark. 159, 288 S.W. 2d 597. Certainly, the same rule must be applied in the case of specialties for the same reasons. One educated and trained in a particular field should not be expected or required to meet the standards or follow the normal procedures prescribed for another field and his treatment should not be measured by the criteria of a field other than his own. See Prosser, Law of Torts, 4th Ed. 163, Ch. 5, § 32; Restatement of the Law, Torts 2d 75, Ch. 15, § 299 A, *Coleman* v. *Wilson*, 85 N.J.L. 203, 88 A 1059 (1913). Appellee is not an oral surgeon but a plastic surgeon who undertook the repair and treatment of appellant's broken jaw, an operation admittedly within his field.

Apparently in recognition of the rule that treatment by a physician is to be tested by the standards of his specialty, appellant alleged in his complaint that appellee did not possess or apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of his profession in good standing engaged in the specialty under which this type of medical practice falls. The difficulty which confronted the trial judge in framing this instruction arose from the opposing theories of the parties. Appellant took the position, supported by his expert witness, that the surgery and treatment of his fractured mandible fell not only within

the field of practice of plastic surgeons but within that of oral surgeons and that the standards of both specialties in this overlapping area were and should be the same. In this he was supported by his expert witnesses, all of whom were oral surgeons, although some of them also qualified as plastic surgeons. On the other hand appellee and his witnesses took the position that there were differences.

It appears that oral surgery is a specialty in the field of dentistry and plastic surgery, in the field of medicine. There was testimony that there was a great deal of feeling between oral and plastic surgeons and some animosity on the part of oral surgeons toward the plastic surgery field. It was also said that oral surgeons could not have patients admitted to a hospital without the collaboration of a medical doctor while plastic surgeons, as medical doctors, could. Among the principal differences of opinion between the medical experts apparent from the record are the priopriety of procedures with reference to removal of teeth in the line of the fracture and the timing of placement of arch bars.[1] Oral surgeons took the position that the teeth should almost always be removed. On the other hand, plastic surgeons seem to feel that sound teeth should not be removed but should be utilized in the repair process to obtain better alignment unless they actually interfere with the setting of the bone. While oral surgeons say that arch bars should be applied before the reduction of the fracture by setting the jaw into its proper position by wires, a plastic surgeon said that in the field of plastic surgery this is optional and dependent upon the judgment of the particular practitioner in the circumstances. Thus, whether the criteria for testing the skill and learning applied by Dr. Hayes were governed by the "type of practice", i.e., the repair of a fractured jaw, or by Dr. Hayes' specialty, i.e., plastic surgery, became one of the questions of fact to be determined by the jury. Restatement of the Law, Torts 2d 75 Ch. 12 § 299 A; *Hart* v. *Steele*, 416 S.W. 2d 927 (Mo. 1967). See also *Buckner* v. *Wheeldon*, 225 N.C. 62, 33 S.E. 2d 480 (1945). The instruction given by the court clearly left this question to the jury. Neither of the parties offered any other instruction which would have done so. To have chosen "type of practice" to the

---

[1]Arch bars were said to be devices applied to the teeth so the upper jaw can be fixed to prevent movement of the jaw and thus stabilize the fractured bone.

exclusion of "specialty" would not have made it clear to the jurors that they might apply the teachings of plastic surgeons and not consider those in the field of oral surgery if they found as a matter of fact that the former should control. It has been appropriately said that the law does not permit a physician to be left at the mercy of his competitors, whether they agree with him or not, when there is a heated controversy between two medical schools of thought and the physician has followed a recognized method of treatment he thinks best, even though expert witnesses may think some other method would have been preferable. *Sims* v. *Callahan,* 269 Ala. 216, 112 S. 2d 776 (1959). We cannot find any error on this score and certainly none to the prejudice of appellant.

Appellant also objects to the AMI instruction in that it requires the physician or surgeon to use "his best judgment" in applying with reasonable care the requisite degree of skill and learning and suggests that the practitioner should be required to possess and apply with reasonable care the skill, learning and judgment ordinarily possessed and applied by members of his profession in good standing engaged in the same type of practice. The instruction as given correctly states the law in Arkansas on this point, at least since the decision in *Dunmam* v. *Raney,* 118 Ark. 337, 176 S.W. 339. See *Gray* v. *McDermott,* 188 Ark. 1, 64 S.W. 2d 94; *Walls* v. *Boyett,* 216 Ark. 541, 226 S.W. 2d 552. This seems to be the prevailing view in the United States, at least where there is room for a difference of opinion. See 61 Am. Jur. 2d 230, 251, 176. Physicians, Surgeons, etc. §§ 110, 124, 147; 70 C.J.S. 947 - 949, 953, 963, §§ 41, 44, 48; Prosser, Law of Torts, 4th Ed., 162, Chap. 5 § 32; *Loudon* v. *Scott,* 58 Mont. 645, 194. P. 488, 12 A.L.R. 1487 (1920); *Buckner* v. *Wheeldon,* supra; *Sims* v. *Callahan,* supra; *Christie* v. *Callahan,* 75 U.S. Ap. 133; 124 F. 2d 825 (D.C. Cir., 1941); *Ball* v. *Mallinkrodt Chemical Works,* 53 Tenn. Ap. 218, 381 S.W. 2d 563, 19 A.L.R. 3d 813 (1964); *Sim* v. *Weeks,* 7 Cal. Ap. 2d 28, 45 P. 2d 350 (1935); hearing denied by Supreme Court July 12, 1935; *Pike* v. *Honsinger,* 155 N.Y. 201, 49 N.E. 760 (1898); *Feeney* v. *Spalding,* 89 Me. 111, 35 A 1027 (1896).

As the Missouri Supreme Court has put it "as long as there is room for an honest difference of opinion among com-

patent physicians, a physician who uses his own best judgment cannot be convicted of negligence, even though it may afterward develop that he was mistaken." See *Haase* v. *Garfinkel*, 418 S.W. 2d 108 (Mo. 1967). Where a physician or surgeon, in the exercise of his best judgment, follows an alternative course of treatment sanctioned and approved by competent medical authority, he cannot be held liable because he failed to pursue another and different course. *Wooten* v. *Curry*, 50 Tenn. Ap. 549, 362 S.W. 2d 820, 93 A.L.R. 2d 307 (1961), cert. den. Nov. 9, 1962; *Jackson* v. *Burton*, 226 Ala. 483, 147 S. 414 (1933); *McClarin* v. *Grenzfelder*, 147 Mo. Ap. 478, 126 S.W. 817 (1910); *Scarano* v. *Schnoor*, 158 Cal. App. 2d 612, 323 P. 2 178, 68 A.L.R. 2d 416 (1958).

It must be kept in mind that the instruction given did not excuse the surgeon if he used his own best judgment unless he also applied the required skill and learning with reasonable care. In other words, one may recover from a physician or surgeon under A.M.I. Civil 1501, on the basis of any one of three alternatives:

(1) if he did not have that degree of skill and learning required;

(2) if he did not apply that skill and learning with reasonable care; or

(3) if he did not use his best judgment.

Certainly we must recognize that physicians and surgeons must make judgment decisions which are not to be tested from the perspective of hindsight only. *Scarano* v. *Schnoor*, supra.

Appellant also argues here that the principal vice in the instruction is in its restricting the jury to the consideration of expert testimony in deciding the question of liability. In our previous consideration of this case, we said that the testimony clearly demonstrated that appellee's duty in the premises was not a matter of common knowledge. *Rickett* v. *Hayes*, 251 Ark. 395, 473 S.W. 2d 466. We also note that, on the earlier appeal, in asserting prejudice through the circuit judge's limiting discovery interrogation of the plastic surgeon used by

appellee, appellant first argued that the question of negligence was so highly technical that expert testimony was mandatory. In his reply brief appellant flatly stated that the present action fell under the classification that required the testimony of expert witnesses. Even if we should say that the evidence differs from that in the previous trial, we note that the appellant made no specific objection to the instruction on this ground in the trial court. He is not entitled to raise this question on appeal.

The judgment is affirmed.

JONES, J., would again reverse and remand.