**UNITED STATES of America, Appellee,**

v.

**Richard Clinton ALLSUP, Appellant.**

No. 77–1581.

United States Court of Appeals,
Ninth Circuit.

Dec. 19, 1977.

Tom O'Toole, Federal Public Defender, Fredric F. Kay, argued, Asst. Federal Public Defender, Tucson, Ariz., for appellant.

James E. Mueller, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before KOELSCH and HUFSTEDLER, Circuit Judges, and FOLEY,* District Judge.

HUFSTEDLER, Circuit Judge:

Allsup appeals from his conviction for two bank robberies (18 U.S.C. § 2113(a)), contending that multiple errors in the course of his trial denied him a fair trial. We agree with him that the cumulative errors mean that he must be tried anew.

The two bank robberies occurred in Tucson, Arizona, in October, 1976, two weeks apart. The Valley National Bank was first robbed and the First National Bank was robbed thereafter. Two factual issues dominated the proceedings: (1) Was Allsup the person who committed either or both of the robberies, and (2) did Allsup have the mental capacity to have committed either or both of the robberies? The prosecution's evidence on both issues was not so insubstantial as to render the conviction vulnerable to a challenge on appeal based upon the insufficiency of the evidence, but neither was the evidence so strong that one or more errors could not have affected the outcome.

The Government presented only one identification witness in respect of the first robbery, and she testified that she was "not sure" that Allsup was the robber. The district judge acknowledged that the witness could not identify Allsup as the man who robbed the bank. Identification thus depended upon the jury's evaluation of the testimony of a Government fingerprint expert who testified that a fragment of a fingerprint found on the note that the robber gave to the teller belonged to Allsup.

Evidence that Allsup robbed the First National Bank was stronger because he was carrying a bill that was part of the First National's bait money when he was arrested. However, the identification testimony was conflicting. Two of the witnesses to the second robbery selected from an FBI

---

* Honorable Roger D. Foley, Chief Judge, United States District Court, District of Nevada, sitting by designation.

photographic spread photograph 1 as the robber's picture and also identified Allsup in the courtroom as the person depicted in photograph 1. In fact, Allsup was not the man who appeared in photograph 1; his picture was photograph 4.

Allsup introduced substantial testimony to cast doubt upon his sanity. Although we think that the Government adequately rebutted the defense, the sanity issue was nevertheless a close one for the jury to resolve.

Of the many contentions of error, we find it necessary to address only four: (1) The inadequacy of voir dire of the jury on the insanity question; (2) the failure of the district court to excuse two jurors for cause; (3) the district court's intervention in cross-examination of a Government witness which resulted in an inflammatory remark from the witness; and (4) the correctness of the district court's refusal to grant Allsup's motion to sever the two bank robbery counts. The other contentions are not sufficiently meritorious to require comment.

## I

Allsup's counsel requested the court to ask members of the panel on voir dire whether any member of the panel "feels he could not clearly sit on this case because evidence of insanity or lack of mental capacity might be introduced into evidence." During the court's conduct of voir dire examination, the following dialogue occurred:

"THE COURT: Anybody else? Thank you. One or two more questions. Is there anyone on this panel who feels that he or she cannot sit on this case because evidence of insanity or lack of mental capacity—I'm afraid of the next word. If the word is going to be pressed I won't ask the question.

"No answer? I won't ask the question.

"MR. KAY (defense counsel): I would ask for the question to be asked, Your Honor.

"THE COURT: You ask me to ask the question and I refuse to ask it unless part of that verb be either omitted or changed.

"MR. KAY: I'm not prepared to do that at this time.

"THE COURT: Very well. You have an exception.

"Is there anyone who feels that they cannot do that at this time for any reason? The answer is no."

Allsup had the right to have prospective jurors questioned about their ability objectively and fairly to evaluate the evidence of insanity or lack of mental capacity. (Cf. *United States v. Jackson* (7th Cir. 1976) 542 F.2d 403, 413; *Brundage v. United States* (10th Cir. 1966) 365 F.2d 616, 618.) The Government does not quarrel with that proposition; rather, the Government argues that the district court, in substance, brought the insanity defense to the jury's attention, even though the court did not ask the defendant's question in the form in which it was originally requested. We do not think that a fair reading of the quoted dialogue supports the Government's claim. The district court did not refer to the insanity defense in any way on voir dire except for the quoted statements. The court's statements, in context, do not convey to us, and we do not think they could have conveyed to the jury that the court was asking the jurors to examine their attitudes about a potential insanity defense. On the contrary, the substance of the court's statements was a refusal to ask the jurors about an insanity defense.

The district court's failure to question the jurors about their attitudes toward an insanity defense cannot be justified by the refusal of defense counsel to promise that he would introduce evidence of insanity. Defense counsel could not be expected to predict with certainty the course of the trial. For example, after the Government's case in chief, defense counsel might have decided to rely on weaknesses in the Government's case without putting on any evidence for the defense. The district court cannot require a commitment to produce evidence relevant to an insanity defense as a condition precedent to interrogating jur-

ors on voir dire about their reactions to a potential defense based on lack of mental capacity or insanity. (*Cf. United States v. Robinson* (1973) 154 U.S.App.D.C. 265, 475 F.2d 376, 380 ("If the issue is one on which jury attitudes should be probed on *voir dire* to assure a fair trial by an impartial jury, this strength of our system should not be scuttled merely because, on relatively infrequent occasions, a planned defense is unexpectedly foreclosed or abandoned.").)

## II

Two of the prospective jurors during voir dire examination disclosed that they worked for the First National Bank, one of the banks that Allsup was charged with robbing. Neither of the prospective jurors worked at the branch that had been robbed. Both jurors responded to an additional inquiry by the court by stating that they would be able to decide the case fairly despite their employment. Counsel for Allsup moved to excuse the two bank employees for cause. The court denied the motion. Thereafter, Allsup's counsel used two of his peremptory challenges to excuse those two jurors. Allsup's counsel ultimately exhausted all of his peremptory challenges. We agree with Allsup that the court erred in denying the motion to excuse the two bank employees for cause, thereby compelling him to use up his peremptories.

■ "[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." (*Irvin v. Dowd* (1961) 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751.) The principal way in which this right to trial by "indifferent" jurors is secured is through the system of challenges exercised during voir dire. Inhibition of the right to challenge peremptorily or for cause is usually deemed prejudicial error, without a showing of actual prejudice. (*See, e. g., Swain v. Alabama* (1965) 380 U.S. 202, 219, 85 S.Ct.

824, 13 L.Ed.2d 759; *United States v. Turner* (9th Cir. 1977) 558 F.2d 535; *United States v. Nell* (5th Cir. 1976) 526 F.2d 1223, 1229; *United States v. Boyd* (5th Cir. 1971) 446 F.2d 1267, 1275, n. 27.) "[I]t is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, for this has the effect of abridging the right to exercise peremptory challenges." (*United States v. Nell, supra,* 526 F.2d at 1229.)

■ A court must excuse a prospective juror if actual bias is discovered during voir dire. Bias can be revealed by a juror's express admission of that fact, but, more frequently, jurors are reluctant to admit actual bias, and the reality of their biased attitudes must be revealed by circumstantial evidence. We agree with the observation in *Kiernan v. Van Schaik* (3d Cir. 1965) 347 F.2d 775, 781: "That men will be prone to favor that side of a cause with which they identify themselves either economically, socially, or emotionally is a fundamental fact of human character." The potential for substantial emotional involvement, adversely affecting impartiality, is evident when the prospective jurors work for the bank that has been robbed. Persons who work in banks have good reason to fear bank robbery because violence, or the threat of violence, is a frequent concomitant of the offense. (*See, e. g., United States v. Poole* (3d Cir. 1971) 450 F.2d 1084 (Claimed error in denying challenge for cause of jurors who were, or who were related to, bank tellers in prosecution for bank robbery was a "contention of some significance."); *Sims v. United States,* (1968) 132 U.S.App.D.C. 111, 405 F.2d 1381, 1384, n. 5 (Excuse for cause of potential jurors who are cab drivers or who are related to cab drivers in a case arising out of the fatal shooting of a cab driver during a robbery attempt.).)[1] The employment rela-

---

1. The potential for bias on the part of a prospective juror who is employed by the bank, a branch of which is alleged to have been robbed by the defendant, is very great. On the other hand, potential bias is extremely attenuated, or non-existent, when the only connection between the victim and the prospective juror is that of employer and employee in a setting in which the employee is working in an area substantially removed from a threat of the crime charged, and, particularly when the crime itself does not involve any apprehension of violence.

tionship coupled with a reasonable apprehension of violence by bank robbers leads us to believe that bias of those who work for the bank robbed should be presumed.

The prospective jurors who worked for the bank robbed should have been excused for cause. Excusing those prospective jurors would have caused a slight inconvenience, which was heavily counterbalanced by the substantial probability that these prospective jurors, despite their disclaimers, could not become the "indifferent" jurors which the Constitution guarantees a criminal defendant.

### III

▓ June Bentley, a First National Bank teller, was an identification witness for the Government. Outside the presence of the jury, Ms. Bentley was shown a series of photographs that had previously been admitted into evidence. She identified photograph 1 as a picture of Allsup and as the person who robbed the bank. On redirect examination, the Government elicited testimony from her that she had meant that the robber was actually the person shown in photograph 4. Photograph 4 was a picture of Allsup. The Government prosecutor sought an explanation for the witness' change in her testimony, and she replied, "Well, I'll tell you, as I look at them right now—I'm scared. As I look at it right now, it is number 4." In the presence of the jury, Allsup's counsel brought out on cross-examination the fact that the witness had changed her testimony moments before and that she had previously identified photograph 1 as the picture of the robber. The trial court intervened, and the following colloquy occurred:

"THE COURT: And did you say why you made the mistake?

"THE WITNESS: Yes, I did.

"THE COURT: What did you tell us then?

"THE WITNESS: Well, when I first glanced at them—I don't know, I'm scared and my mind just went blank.

"THE COURT: Are you talking about how you feel today?

"THE WITNESS: Yes, sir.

"THE COURT: All right. Then you made a mistake?

"THE WITNESS: Yes, sir."

The district court, of course, is much more than a "moderator or umpire." (Smith v. United States (9th Cir. 1962) 305 F.2d 197, 205.) The district court may properly participate in the examination of witnesses for the purpose of "clarifying the evidence, controlling the orderly presentation of the evidence, confining counsel to evidentiary rulings, and preventing undue repetition of testimony." (United States v. Malcolm (9th Cir. 1973) 475 F.2d 420, 427.) But the court must also be mindful that in the eyes of a jury, the court occupies a position of "preeminence and special persuasiveness" (United States v. Trapnell (9th Cir. 1975) 512 F.2d 10, 12), and, accordingly, the court must avoid the appearance of giving aid to one party or another. (See, e. g., United States. v. Pena-Garcia (9th Cir. 1974) 505 F.2d 964, 967.)

The district court's intervention in this situation rehabilitated a prosecution witness whose credibility had been seriously undermined by defense counsel. (See United States v. Nazzaro (2d Cir. 1973) 472 F.2d 302, 307.) The district court knew from the testimony that had been taken out of the presence of the jury that the witness was going to state that she was "scared" at the time of the trial. The implication was strong that Allsup had frightened the witness, not simply that she was suffering from a common case of nervousness from

Thus, for example, in Frazier v. United States (1948) 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187, no abuse of discretion occurred in refusing to dismiss for cause in a narcotics case prospective jurors who were employees of the Treasury Department, when the jurors were not connected with the narcotics bureau within the department. Similarly, in United States v. Boyd, supra, 446 F.2d 1267, no abuse of discretion was involved in the district court's refusal to strike for cause employees of an Air Force base in a prosecution for receiving tools stolen from the base, where there was no showing that the jurors were involved in base security or were employed in the department from which the tools were stolen.

being in a courtroom. The impact of the district court's interrogation was to destroy the effect of telling cross-examination, to rehabilitate the witness, and to give her testimony an extra and a potentially prejudicial persuasiveness. (*Cf. United States v. Moorman* (7th Cir. 1966) 358 F.2d 31.)

## IV

■ No abuse of discretion was shown in the refusal of the district court to grant Allsup's motion to sever the two bank robberies for the purposes of trial. We are aware that the Government's case on both counts was strengthened by trying the two bank robberies together. However, the two robberies were carried out in a similar way and occurred within two weeks of one another. The district court, pursuant to Rule 8 of the Federal Rules of Criminal Procedure, did not abuse his discretion in refusing to sever the two bank robbery counts. (United States v. Ragghianti (9th Cir. 1975) 527 F.2d 586.)

REVERSED AND REMANDED FOR A NEW TRIAL.

FOLEY, District Judge, concurring:

Allsup has appealed from his conviction for two bank robberies, contending that multiple errors in the course of his trial denied him a fair trial. In an opinion authored by Judge Hufstedler, the majority agrees with Allsup that the cumulative errors dictate that he must be tried anew.

Of the many contentions of error, the majority found it necessary to address only four: (1) The inadequacy of the voir dire of the jury on the insanity question; (2) the failure of the district court to excuse two jurors for cause; (3) the district court's intervention in cross-examination of a Government witness which resulted in an inflammatory remark from the witness; and (4) the correctness of the district court's refusal to grant Allsup's motion to sever the two bank robbery counts. Of the four, the majority concluded that the district court had erred with respect to the first three, the cumulative effect thereof mandating a new trial. While I concur, I would like to address the issue presented by Allsup's second contention, namely, the failure of the district court to excuse two jurors for cause.

As previously mentioned, Allsup was accused of two counts of robbery of two separate banking institutions. The defense requested voir dire of the jury concerning whether anyone on the panel was an employee of either of the two banks in question. Subsequently, this question was asked by the trial judge. Prospective jurors Shappel and Parker both responded that they worked for the First National Bank but not at the branch that had been robbed. Upon further inquiry by the Court, both jurors stated that they would be able to decide the case fairly in spite of their employment. At the end of the Court's voir dire, counsel for Allsup requested permission to approach the bench. The request was refused. Thereafter, counsel for both the Government and defense were instructed to exercise their peremptory challenges, which they did. In the course of expending all of its ten allotted peremptory challenges, the defense excused the two bank employees.

After the first witness had been sworn and testified, counsel for Allsup requested to take up two matters with the Court outside the presence of the jury. A recess was taken. At this time, counsel for the defense informed the Court that the purpose of the earlier request to approach the bench during the voir dire of the jury was to request of the Court to dismiss for cause the two bank employees.

ISSUE: Is the error in refusing to excuse prospective jurors for cause cured when the jurors were peremptorily challenged by the defense; the defense used all of its allotted peremptory challenges; and the defense cannot demonstrate that an objectionable juror sat as a result thereof?

CONCLUSION: Recent federal appellate decisions indicate that the error is not cured and, furthermore, warrants automatic reversal.

At the outset, it must be noted that the ensuing discussion is factually limited to situations where, as in this case, the prospective juror or jurors should have been dismissed for cause,[1] where the objectionable juror was stricken by the defense, and where the defense exhausts all of its allocated challenges.[2]

The majority states that it is reversible error, implicitly even without a showing of prejudice to the defendant, for a court to force the defendant to use his peremptory challenges on persons who should be excused for cause because this has the effect of abridging the right to exercise peremptory challenges. This argument is predicated upon four cases: *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *U. S. v. Nell,* 526 F.2d 1223 (5th Cir. 1976); *U. S. v. Boyd,* 446 F.2d 1267 (5th Cir. 1971), and *U. S. v. Turner,*[3] 558 F.2d 535 (9th Cir. 1977).

In *Swain v. Alabama,* supra, a black, who was convicted of rape by an all-white jury, appealed from his conviction asserting, inter alia, that he was denied equal protection of the law by a discriminatory jury selection in that the prosecutor used his peremptory strikes to remove all black veniremen. In stating that the denial or impairment of the right to peremptory challenges is reversible error without a showing of prejudice, the Supreme Court emphasized the importance of the right. The Court said that the peremptory challenge is one of the most important rights secured to the accused, it recognizes that:

> "Neither the number of peremptory challenges nor the manner of their exercise is constitutionally secured." *Turner,* at 538.

The nexus between the federal constitution and the right to peremptory challenges appears to be that while the right to trial by impartial jury is constitutionally secured, the grant and exercise of peremptory challenges has statutory law as its genesis and protection. This relationship was defined in *U. S. v. Sams,* 470 F.2d 751 (5th Cir. 1972).

At page 753, it was stated:

> "[The defendant] also contends that the curtailment of his privilege to exercise his [peremptory] challenges amounts to a violation of the guarantees of the Sixth Amendment providing for trial by jury.
>
> "The government replies, first, that the Supreme Court has held that the number of, and the manner of exercising, *peremptory challenges does not go to the constitutional guaranty of a right to trial by jury,* . . . " (emphasis added)

The Court responded:

> "We recognize that the Supreme Court has said, *'There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges to defendants in criminal cases; trial by an impartial jury is all that is secured.'* Stilson v. United States, 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154. It seems clear, therefore, that unless, since the Court's decision in *Stilson* some intervening decision has emerged, the granting and exercising of the right to peremptory challenges must be tested by the rules, which of course, have the effect of statutory law. We find no such case." (emphasis added)

1. If, instead of satisfying the predicate necessary to dismiss a juror for cause, that is, a finding of some "actual or implied bias," it was merely demonstrated that a possibility of prejudice existed in a prospective juror and that juror was peremptorily excused by the defense, it has been stated that there would be no abuse of discretion of the trial court sufficient to warrant reversal. In *Mares v. U. S.,* 383 F.2d 811 (10th Cir. 1967), cert. denied 390 U.S. 961, 88 S.Ct. 1060, 19 L.Ed.2d 1157, in reviewing an overruled objection for cause of a prospective juror who had viewed a newspaper article deemed prejudicial to the defendant, the Court stated, at 812:

   > "At the most, we have a showing of a possibility of prejudice and that is not enough. In our opinion the trial court did not abuse its discretion in denying the challenge against Mrs. Nusbaum. In any event the defense used its third peremptory challenge to excuse Mrs. Nusbaum. No showing is made that the jury which actually tried the case was anything but fair and impartial." (footnotes omitted)

2. Similarly, it has been stated that the defense cannot complain if it had to peremptorily remove an objectionable juror where either it did not expend all of its peremptory challenges allocated to it or it was granted additional challenges commensurate in amount with the number of disputed proposed veniremen. *Harper v. Adams,* 166 So.2d 824 (Fla.App.1964); *Mellinger v. Prudential,* 322 Mich. 596, 34 N.W.2d 450 (Mich.1948); *Cox v. Sarkeys,* 304 P.2d 979 (Okl.1956).

3. In addressing the issue of whether an error in restricting the exercise of peremptory challenges warrants automatic reversal, neither *Swain, Nell, Boyd* nor *Turner* interprets or relies on any constitutional provision whether it be state or federal. In fact, while *Turner* holds

that the purpose of the peremptory challenge is not only to "eliminate extremes of impartiality on both sides, but also to assure the parties that the jurors before whom they try the case will decide on the basis of evidence before them, and not otherwise." *Swain* at 219, 85 S.Ct. at 835. As such, the Court concluded, the Constitution could not require an examination of the prosecution's reasons for the exercise of his challenges in light of the function it serves in a pluralistic society in connection with the institution of the jury trial.

The remaining two cases relied upon by the majority present a slightly different factual situation. Unlike the situation presented in *Swain,* where the defendant complained that certain veniremen, who he wanted to sit but were not allowed to sit because the prosecutor peremptorily excused them, these cases present the situation where the proposed veniremen, who the defendants did not want to sit, would have been allowed to sit but for the exercise of the defendant's peremptory challenges.

In *U. S. v. Boyd,* 446 F.2d 1267 (5th Cir. 1971), the defendant complained that certain prospective jurors who were employees of the Government, who were peremptorily stricken by the defendant, should have been excused for cause. While the Court concluded that there existed nothing in the record which would indicate that the lower court abused its discretion in refusing to dismiss the Government employees for cause, it did state by way of dicta in a footnote, that:

"... if the refusal to strike for cause had been erroneous, this action by the defense (the fact that the defense peremptorily struck the disputed jurors and used all of its challenges) would not have cured the error. *Francone, et al. v. Southern Pac. Co.,* 5 Cir. 1944, 145 F.2d 732. The effect of this action would have been the reduction in number of peremptory challenges allowed the defense, an impairment of a substantial right which would require a reversal."

Similarly, in *U. S. v. Nell,* 526 F.2d 1223 (5th Cir. 1976), the defendant appealed his conviction of embezzling union funds, complaining, inter alia, that he was forced to expend two of his peremptory challenges on persons who should have been excused for cause. The first disputed prospective juror who was removed peremptorily by the defense stated that he had a strong distaste for unions. The appellate court concluded that the lower court should have dismissed him for cause.

"Because Mr. Bougher admitted to actual bias, it was error for the court to deny Nell a challenge for cause. Since the effect of the court's action was to reduce the number of peremptory challenges allowed the defense, we have no choice but to reverse. *United States v. Boyd,* supra, 446 F.2d at 1275 n. 27.[10]

[10] Defense counsel told the trial court several times that its rulings were forcing him to use up his peremptories on jurors who should have been excused for cause. Since he actually did run out of peremptories, and since the court offered no more, the rulings could not have been harmless error." *Nell* at 1230.

In *United States v. Turner,* 558 F.2d 535 (9th Cir. 1977), this court held, at page 538:

"An error in restricting the exercise of peremptory challenges results in an automatic reversal. The defendant need not show that he was prejudiced by the error. (*Swain v. Alabama,* supra, 380 U.S. at 219, 85 S.Ct. at 835, 'The denial or impairment of the right [of exercising peremptories] is reversible error without a showing of prejudice [citations omitted].')."

In *U. S. v. Turner,* the impairment of the exercise of peremptory challenges arose not in the factual context of the previously discussed cases, in which the impairment resulted from not properly excusing prospective jurors for cause, but, rather from a dispute between the trial court and the defendant as to whether the defendant had actually waived one of his peremptory challenges. The trial court thought that he did; this Court stated that he did not. Since the defendant was improperly denied a peremptory challenge, this Court held that the conviction should be reversed, even without a demonstration that the defendant had

been prejudiced by the denial of the peremptory challenge.

The rule that automatic reversible error is committed when a defendant is forced to expend a peremptory challenge on a proposed venireman who should have been dismissed for cause has not always been the law, however.

In a line of earlier cases, there is authority for the proposition that once it is determined that an improper ruling was made on a challenge for cause, a new trial will not necessarily be granted, even where the defendant has exhausted all of his peremptory challenges. Some courts have placed the burden on the challenging party to demonstrate that because he used a peremptory challenge on an incompetent venireman, an objectionable juror was allowed to serve.

In *State v. Springer*, 172 Kan. 239, 239 P.2d 944 (1952), the Kansas Supreme Court stated, when confronted with the issue of whether it was reversible error when a defendant was forced to expend a peremptory challenge on a proposed venireman who should have been dismissed for cause:

"The constitutional guaranty is that an accused shall be tried by an impartial jury. The matter of peremptory challenges is merely statutory machinery for carrying out and securing the constitutional guaranty. Error in overruling a challenge to a juror is not ground for reversal *unless the accused was prejudiced thereby*. The real question is—Was the jury which tried the defendant composed of impartial members? In the absence of any objection on the part of defendant to any member as it was finally drawn to try him we cannot say it was not impartial." (Emphasis added) *Springer* at 948.

Similarly, in *Los Angeles & S.L.R. Co. v. Umbaugh*, 61 Nev. 214, 123 P.2d 224, the Nevada Supreme Court stated:

"Defendants assigned as error the ruling of the trial court in denying its challenge to venireman Gerald H. Musser. Musser was thereafter excused from the jury by reason of the exercise of their third peremptory challenge. It does not appear that they would have employed another peremptory challenge, if they had been entitled to it, nor is there any suggestion that an impartial jury was not obtained. So, it is difficult to see how defendant was prejudiced by the denial of its challenge by the court. A consideration of all the prospective juror's examination touching his qualifications convinces us that the court's ruling was not open to criticism." *Umbaugh*, 123 P.2d at 232.

And finally, in *Arkansas State Highway Commission v. Dalrymple*, 252 Ark. 771, 480 S.W.2d 955 (1972), when confronted with the same issue as addressed by the Nevada and Kansas courts, the Court stated:

"Appellant's challenge to venireman Easterling was made because the voir dire examination showed that he had an opinion of real estate values in the area and because he knew one of the prospective witnesses. The challenge to venireman Rowe was on the basis that he also knew one of the prospective witnesses. After the challenges were overruled, the panel was completed and each side, pursuant to Ark.Stat.Ann. Sec. 39–229 (Repl. 1962), struck three names. Appellant struck the names of Easterling, Rowe and one other but made no showing that he would have struck the name of any other juror if he had had a peremptory challenge left. Under such circumstances we hold that appellant has shown no prejudice. . . . As was pointed out in *Mabry v. State*, 50 Ark. 492, 8 S.W. 823 (1888), the right of peremptory challenges is conferred as a means to reject jurors—not to select jurors, and until such time as a party is forced to take an objectionable juror without the privilege of exercising a peremptory challenge, he has shown no prejudice. *Green v. State*, 223 Ark. 761, 270 S.W.2d 895 (1954). Here, as in the *Roark Transportation* case, appellant does not contend that any of the jurors who served were disqualified. Consequently appellant has shown no prejudicial error."

See also *Rickett v. Hayes*, 256 Ark. 893, 511 S.W.2d 187 (1974), and *Grasham v. South-*

*ern Railway Company*, 111 Ga.App. 158, 141 S.E.2d 189 (1965).

I don't think that appellate courts should reverse trial courts unless the error below in depriving a party of a statutory right to peremptory challenges, is shown by the party to have been prejudicial and to have deprived him of a fair trial.

In conclusion, it appears, notwithstanding the earlier authority to the contrary, which I believe to be the better rule, under *Swain, Boyd, Nell* and *Turner* the law now is that an error in restricting the exercise of peremptory challenges results in automatic reversal.