McKAY, Circuit Judge,
dissenting in part:
I join the majority’s opinion except as to the city employee’s bias. As to that issue, I do not suggest that ruling for Las Cruces *1249 violates any binding precedent. Neither this court nor the Supreme Court has decided whether municipal employees may be jurors in cases involving their employers, and, consequently, we have some flexibility to reach an appropriate answer to the question. Nevertheless I respectfully cannot agree with the answer the majority has reached.
I begin my analysis with the traditional common-law rule requiring us to impute bias to the parties’ employees. As the Supreme Court has held, this rule does not apply to the employees of the federal government. But the reasons for the traditional rule apply with full force in this case, while none of the Supreme Court’s reasons for exempting federal employees have any relevance to municipal corporations like Las Cruces. We should therefore impute bias to Las Cruces’ employee and reverse the district court for allowing him to serve on the jury.
DISCUSSION
In Crawford v. United States, the Supreme Court endorsed the ancient common-law rule that “one is not a competent juror in a case if he is master, servant, steward, counselor, or attorney of either party. In such case a juror may be chai-, lenged for principal cause as an absolute disqualification of the juror.” 212 U.S. 183, 195, 29 S.Ct. 260, 53 L.Ed. 465 (1909) (citing 3 William Blackstone, Commentaries on the Laws of England 363 (Thomas M. Cooley & Andrew James DeWitt, eds., 4th ed. 1899)).
As the majority points out, the Supreme Court later acknowledged an exception to the traditional rule: at common law, servants of the crown were not categorically disqualified from serving as jurors in crown cases. The Supreme Court applied this exception to “Government employees,” but in doing so it did not question the traditional rule. Dennis v. United States, 339 U.S. 162, 164-67, 70 S.Ct. 519, 94 L.Ed. 734 (1950). So far as I can tell, Crawford is still good law where the “masters and servants of private parties” are concerned. United States v. Wood, 299 U.S. 123, 138, 57 S.Ct. 177, 81 L.Ed. 78 (1936).
Certainly the Tenth Circuit has never questioned Crawford. Instead, we have acknowledged that “courts have presumed bias in extraordinary situations,” such as “where a prospective juror ... was an employee of a party to a lawsuit. In these situations, the relationship' between the prospective juror and a party to the lawsuit points so sharply to bias” that the juror should be disqualified. Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1468 (10th Cir. 1994) (brackets and citations omitted) (citing Francone v. S. Pac. Co., 145 F.2d 732, 733 (5th Cir. 1944) (applying the traditional rule)).
Nor should we question Crawford now. Even if we had authority to overturn Supreme Court precedent, this is not a doctrine whose only justification is that “so it was laid down in the time of Henry IV.” Oliver Wendell Holmes, Jr., The Path of the Law, 10 Harv. L. Rev. 457, 469 (1897). Instead its purposes remain as vital as they have always been. As the Crawford Court wrote,
Modern methods of doing business ... have not wrought any change in human nature itself, and therefore have not lessened or altered the general tendency among men ... to look somewhat more favorably ... upon the side of the person or corporation that employs them, rather than upon the other side.
Crawford, 212 U.S. at 196, 29 S.Ct. 260. This “general tendency” was acknowledged in this very case, by the very city employee whose jury service is being challenged:
*1250 THE COURT: ... [S]ince you work for the City, do you think everything the City does is absolutely correct?
JUROR: Well, it’s — being my employers, I would say yes.
(Appellants’ App. at 250.)
But, important as such general tendencies are, they are not the only reason for the common-law rule. There is also simple self-interest. Crawford justified its holding in part by pointing out the consequences the employee-juror might face if his employer lost the case. “[H]is employment was valuable to him,” the Crawford Court acknowledged, and even if “cessation of that employment would [not] actually follow a verdict, ... [i]t is enough that it might possibly be the case.” Id. at 196-97, 29 S.Ct. 260. “[T]he juror ought not to be permitted to occupy a position of that nature” and thus put the trial’s fairness — or the juror’s livelihood — at risk. Id at 197, 29 S.Ct. 260.
Again, the Tenth Circuit has recognized the wisdom of this reasoning. As we wrote in Vasey v. Martin Marietta Corp., “courts have presumed bias in extraordinary situations where a prospective juror has had a direct financial interest in the trial’s outcome.” 29 F.3d at 1468. We applied this principle in Getter v. Wal-Mart, where we concluded that a juror was impliedly biased because his “financial well-being was to some extent dependent upon [the] defendant’s.” Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1122 (10th Cir. 1995). Such financial dependence, we held, was “precisely the type of relationship that requires the district court to presume bias and dismiss the prospective juror for cause.” Id.
Admittedly, Vasey did not actually involve parties’ employees and thus did not actually hold that parties’ employees must be disqualified. But Vasey plainly assumed that it did not need to make such a holding — that a rule disqualifying parties’ employees already existed. It said so explicitly, it cited a case explaining the traditional rule, and it chose not to disqualify a juror in part because, although he had some economic relationship to a party, he was not actually the party’s employee. See Vasey, 29 F.3d at 1467-68.
Likewise, Getter did not involve a party’s employee and therefore did not directly hold that parties’ employees must be disqualified; rather, Getter specifically held only that a particular juror was disqualified because he owned Wal-Mart shares and was married to a Wal-Mart employee. But the whole thrust of Getter’s reasoning supports the traditional rule: Getter held that the juror needed to be disqualified because his “financial well-being” was “dependent” on Wal-Mart. 66 F.3d at 1122. I believe this reasoning would apply with no less force to a Wal-Mart employee than to the shareholding spouse of a Wal-Mart employee.
Two circuit courts, including this one, have considered whether Getter disqualified jurors who were not shareholders but merely employees of a party. See Hatfield v. Wal-Mart Stores, Inc., 335 Fed.Appx. 796, 801-02 (10th Cir. 2009); Caterpillar, Inc. v. Sturman Indus., 387 F.3d 1358, 1372-73 (Fed. Cir. 2004). Both said yes, and I believe they are right.
Of the two relationships at stake in Getter — the juror’s shareholding and the employment of the juror’s spouse — shareholding gave the juror only the most negligible financial interest in the verdict. Wal-Mart’s total outstanding stock is worth hundreds of billions of dollars. Even a juror who owned ten million dollars of Wal-Mart shares would bear only a few thousandths of a percent of any verdict against the company. But a Wal-Mart employee, like the spouse of a Wal-Mart employee, could lose his livelihood if Wal-Mart chose to *1251 retaliate.[1] Crawford was right: no juror should be put in that position.
Turning then to the actual issue before us, I note that this issue — unlike the implied bias of employees of private parties — is open to fair debate. I ultimately reach a different conclusion than the majority, and I thus respectfully dissent from the majority’s holding.
Under our precedents, this case requires us to resolve the following question: does a municipal employee have more in common with a private employee, who would be disqualified, or with a federal employee, who would not? Based on my reading of United States v. Wood, the case in which the Supreme Court recognized the federal-employee exception, I conclude that municipal employees and federal employees have little in common at all. Thus, I conclude that the Crawford rule must be applied to municipal employees, disqualifying them from jury service in cases involving their employers.
The Wood Court alluded to six reasons for exempting federal employees from the common-law rule. None of them are relevant here.
1. Common-law tradition. First, Wood relied on a traditional exception to the common-law rule: at common law, “servants of the crown” could be jurors in “crown cases.” 299 U.S. at 139, 57 S.Ct. 177. It was only logical to extend this exception to employees of the federal government, since the federal government is the American institution most similar to the British sovereign.
But municipal corporations are not “the crown” and never have been. In Blackstone’s day as now, they were merely creatures of the crown — self-governing societies established by a sovereign, but not sovereigns themselves, and lacking any natural claim to the sovereign’s special privileges.[2] Thus Wood’s historical reasoning, though perfectly sensible as applied to federal employees, has nothing to do with municipal governments.
2. Difficulty finding jurors. Second, Wood explained the reason behind the traditional exception for “crown servant[s]”: “from the extensive variety of the king’s connections with his subjects through tenures and offices, if favour to him was 'to prevail as an exception to a juror, it might lead to an infinitude of objections, and so operate as a serious obstruction to justice in suits in which he is a party.” Id. at 137, 57 S.Ct. 177.[3] Wood noted a similar problem in the District of Columbia, where disqualifying federal employees had “narrow[ed] the eligible list of jurors ... to the point where it sometimes became difficult to secure jurors possessing the necessary qualifications.” Id. at 133, 57 S.Ct. 177. Allowing federal employees to be jurors served “a public need.” Id. at 148, 57 S.Ct. 177.
There is no “public need” here. No municipality in this circuit is so large as to *1252 employ more than a small fraction of the potential jurors in its district.
3. Legislative judgment. Third, Wood dealt with an Act of Congress. Because courts were having difficulty finding jurors in the District of Columbia, Congress passed a statute allowing federal employees to serve on D.C. juries even when the federal government was a party. Id. at 130-32, 57 S.Ct. 177. This statute, the Wood Court wrote, was “tantamount to a legislative declaration that the [disqualification of federal employees] was artificial and not necessary to secure impartiality.” Id. at 148-49, 57 S.Ct. 177.
No Act of Congress concerns us here. No legislative body has concluded that disqualifying municipal employees is “artificial” or “not necessary to secure impartiality.”
A Differences between civil and criminal cases. Fourth, Wood was a criminal case and relied in part on differences between criminal and civil cases. The Wood Court asked, “Why should it be assumed that a juror, merely because of employment by the Government, would be biased against the accused? In criminal prosecutions the Government is acting simply as the instrument of the public in enforcing penal laws for the protection of society.” Id. at 149, 57 S.Ct. 177. In other words, although the federal government is technically a party in federal criminal prosecutions, we assume it seeks justice rather than its own self-interest. Because the government’s self-interest was not at stake, according to Wood, its employees would not be tempted to prejudge the case for their employer’s benefit.
This reasoning has no relevance to municipal employees in a civil case. Las Cruces is being sued for millions of dollars, it wishes to keep its millions of dollars, and its employees might have any number of reasons for sharing its wish.
5. Implausibility of retaliation. Fifth, Wood rejected the suggestion “that an employee of the Government may be apprehensive of the termination of his employment” if the government loses its case. Id. at 150, 57 S.Ct. 177. The Court thought that a federal employee would fear for his job only in “some special and exceptional case,” and thus the possibility of bias arising from such a fear was “remote” and “insignificant.” Id.
Today’s majority quotes this language as if it applied universally to all governments — as if governments, merely by virtue of being governments, were unlikely to retaliate against employees who displeased them. But merely glancing at Wood’s facts suggests otherwise. In Wood, the jurors were clerks in the Weather Bureau, the Federal Emergency Administration, the Treasury, and the Navy Yard. Id. at 131, 57 S.Ct. 177. Why would the Weather Bureau care if the government lost a petit larceny case? Why would it even know? The idea that agencies like these would take revenge on .behalf of the D.C. police is indeed “far-fetched and chimerical.” Id. at 150, 57 S.Ct. 177.
But in our case the juror was employed by the same municipal corporation that was being sued; his livelihood was at the mercy of the same city council that would have to satisfy any judgment. I do not know whether Las Cruces would have retaliated, but I am certain there are cities that would. Moreover, even if a city would not in fact retaliate, its employee might reasonably fear retaliation in a way a federal employee would not. Even if “cessation of [the juror’s] employment would [not] actually follow a verdict, ... [i]t is enough that it might possibly be the case.” Crawford, 212 U.S. at 196-97, 29 S.Ct. 260. No one facing such a risk should be allowed to sit on a jury. Id.
*1253 6. Public respect for the judicial process. Finally, the Wood Court rejected the argument that allowing federal employees to serve as jurors would “impair the public respect in which the processes of the law should be held.” 299 U.S. at 150, 57 S.Ct. 177. It did so because it was so hard to imagine that the jurors’ employment would improperly influence their verdict.
In contrast, it is not hard at all to imagine that a municipal employee’s verdict might be influenced by fear of retaliation or by concern for his employer’s financial well-being. Further, while I agree that no one would doubt the Wood 'jurors’ impartiality based solely on their employment, I believe many reasonable people would wonder whether Zia Shadows got a fair trial. And as Crawford put it,
To maintain [the system of trial by jury] in the respect and affection of the citizens of this country it is requisite that the jurors chosen should not only in fact be fair and impartial, but that they should not occupy such relation to either side as to lead, on that account, to any doubt on that subject.
212 U.S. at 195, 29 S.Ct. 260.
In short, all of the reasons for disqualifying parties’ employees are relevant today: an employee’s subconscious tendencies to favor his employer, to which our juror frankly admitted; his financial dependence on his employer; his possible fear of retaliation;[4] and the need to preserve public confidence in the jury process by disqualifying not only jurors who are actually biased, but even those who reasonably look biased.
In contrast, none of the Supreme Court’s reasons for exempting federal employees have any force here. The common-law exception Wood relied on does not apply. Disqualifying municipal employees will not lead to a juror shortage. Congress has not spoken, and Las Cruces’ self-interest is most certainly at stake. Finally, because the possibility of retaliation is much more than “chimerical,” the idea that city employees do not fear retaliation — simply because they work for the government — is itself “farfetched.” A municipal employee should never be allowed to decide a civil case in which her employer is a party.
CONCLUSION
While the reasons for disqualifying parties’ employees have not changed since Crawford, one thing has changed: it has become much more expensive to obtain a jury verdict. It has thus become a much weightier decision to vacate a jury verdict — a decision that inflicts immense cost and inconvenience on parties and jurors, a decision that appellate courts instinctively prefer to avoid unless a real injustice has been done.
This instinct, conscious or not, might make an appeals court uncomfortable with clear implied-bias rules. Implied bias rulings are reviewed without deference, and if the trial court seats an impliedly-biased juror over a party’s objection, the appellate court must reverse even if the juror was not actually biased, and even if the verdict is plainly correct. The only way to avoid reversal is to avoid finding implied bias.
Thus, the instinct to avoid reversal tempts appeals courts to make the implied bias doctrine flexible and context-sensitive rather than specific and defined — in short, to turn appellate review of implied bias rulings into a second search for actual bias. With such flexibility, the appeals *1254 court can choose to find bias only when it is confident, based on the specific facts of the case, that it should reverse.[5]
This temptation toward flexibility should be resisted. The whole reason for the implied bias doctrine is that certain categories of individuals, due to their relationships with the parties or other “extraordinary situations,” cannot serve on a jury without calling the verdict’s fairness into question. Vasey, 29 F.3d at 1468. A specific, defined implied bias rule allows a trial court to decide, quickly and easily, whether a juror belongs to such a category. In contrast, a flexible, context-dependent rule requires extensive fact-finding — . the facts needed to prove a real likelihood of retaliation against a specific juror, for example, are not fundamentally different from the facts needed to prove a whole retaliation claim. And even after this extensive fact-finding, fact-finding totally out of place in the hurried context of voir dire, a trial court would have little certainty whether it faced an “extraordinary” situation or just an unusual one.
A flexible implied bias doctrine thus does little to protect the fairness of the trial in advance, when jurors can be dismissed without invalidating a verdict. Then, on appeal, a flexible implied bias doctrine invites courts to issue context-sensitive affirmances, based on the totality of the evidence, even in those few “extraordinary situations” where a reasonable person could not help but question the juror’s impartiality. Such context-sensitive affirmances, with their necessarily vague holdings, cannot possibly assuage the doubts of the public or of the losing party. Rather the opposite is true.
An employment relationship with a party is an extraordinary situation requiring exclusion of a juror for implied bias. This court has said so. The Supreme Court has said so. I would thus remand for a new trial.

. Admittedly, such retaliation may be illegal. But the distant and uncertain prospect of winning a retaliation suit would be cold comfort to someone facing termination.

. According to tradition, the first municipal corporation was created in 1439, when a young Henry VI incorporated Kingston-upon-Hull. 1 Eugene McQuillin, A Treatise on the Law of Municipal Corporations^ 51, at 109 (1911).

. Here the Supreme Court quotes a comment on Coke’s Institutes by Francis Hargrave, who produced annotated editions of the Institutes in the late eighteenth and early nineteenth centuries. The full quote can be found at 1 Edward Coke, The First Part of the Institutes of the Laws of England, book 2, ch. 12, § 234 n.4 [§ 156.a. n.4] (Francis Har-grave & Charles Butler eds., 19th ed. 1832).

. Indeed the likelihood of retaliation might actually be greater for a municipal employee than for the employee of a private corporation like Wal-Mart: verdicts against private corporations do not lead to tax increases, or to the public outrage they sometimes provoke.

. For example, under the Ninth Circuit's implied bias doctrine, an accused bank robber may not be convicted by jurors who are employed at another branch of the bank he is accused of robbing. United States v. Allsup, 566 F.2d 68, 71-72 (9th Cir. 1977). But a court applying that doctrine concluded that it did not disqualify a maintenance supervisor employed by the company whose gas station had been robbed' — on the grounds that gas station robberies are not as frightening to maintenance supervisors as bank robberies are to employees at a bank branch. Caviness v. Runnels, No. CIV S-04-2629 MCE JFM P., 2007 WL 1454279, at *10-11 (E.D. Cal. May 17, 2007). This sort of fact-intensive, contextual inquiry should be left to trial courts examining jurors for actual bias, and then reviewed only deferentially thereafter.